Adams Express Co. *v.* State.

---

ADAMS EXPRESS COMPANY *v.* THE STATE.

[No. 19,934. Filed June 26, 1903. Rehearing denied October 28, 1903.]

CARRIERS.—*Express Companies.*—*Actions Against.*—*Trade Name.*—Under the provisions of §3306 *et seq.* Burns 1901, that all copartnerships, associations of persons, joint stock companies, or companies not organized in this State, shall file a statement in the office of the recorder in each county in which their business is conducted, a statement setting forth, among other things, the name of such association, a copartnership or company engaged in the business of a common carrier, under the trade name of Adams Express Company, was properly sued in such name. *pp. 340, 341.*

SAME.—*Trade Name.*—*Complaint.*—The act of 1879 (§3306 *et seq.* Burns 1901) applies not only to foreign companies, but to all copartnerships, associations, or companies not organized or incorporated under the laws of this State, usually called express companies, engaged in the business of carrying or transporting money, merchandise, etc., and in a suit against such a company by its trade name it is not necessary to allege that it has filed with the county recorder the statement required by §3307 Burns 1901. *p. 341.*

PLEADING.—*Defenses.*—*Sued by Wrong Name.*—*Abatement.*—If a defendant desires to avail itself of the defense that it is sued by the wrong name, such defense should be set up by answer in abatement. *p. 341.*

CARRIERS.—*Express Companies.*—*Discrimination.*—Under the provisions of the act of 1879 (§3306 Burns 1901) declaring all copartnerships, associations, joint-stock associations or companies not organized or incorporated under the laws of this State engaged in the business of carrying or transporting money, merchandise, or other articles over or upon any railroads, etc., of this State, to be common carriers, it is not necessary that such companies should be

Adams Express Co. v. State.

incorporated to entitle them to the protection against unjust discrimination as provided by §3312b et seq. Burns 1901. *pp. 341, 342.*

CARRIERS.—*Express Companies.—Discrimination.—Recovery of Statutory Penalty.—Complaint.*—In an action under §3312b et seq. Burns 1901, to recover the statutory penalty for failure to receive and carry goods tendered to an express company by an express company, it was sufficient, for the purposes of the complaint, to allege that the latter was a responsible express company engaged in the business of a common carrier. *p. 342.*

SAME.—*Express Companies.—Discrimination.—Penalty.—Complaint.*—A complaint against an express company to recover the statutory penalty as provided by §3312b et seq. Burns 1901, alleging the failure of defendant to receive and carry a certain described package, and to accept and complete the carriage and delivery thereof, to pay the charges of each preceding carrier, and to collect at the place of delivery the full charges for the transportation of the package, although it was the custom and usage at that point so to do with other companies, sufficiently showed that the facilities denied were extended to other companies at that agency. *pp. 342, 343.*

SAME.—*Express Companies.—Discrimination.—Penalty.—Constitutional Law.*—The act of 1901 (§3312b et seq. Burns 1901) providing a penalty for unjust discriminations by express companies in the receipt and carriage of express matter is not in violation of §22, article 4, of the Constitution forbidding the passage of local or special laws for the punishment of crimes and misdemeanors. *p. 343.*

SAME.—*Express Companies.—Discrimination.—Penalty.—Constitutional Law.*—The provision of §16, article 1, of the Constitution, that all penalties shall be proportioned to the nature of the offense has reference to criminal proceedings, and does not apply to the penalty provided by the act of 1901 (§3312b Burns 1901) for unjust discrimination by express companies in the carriage of goods. *pp. 343, 344.*

SAME.—*Express Companies.—Discrimination.—Penalty.—Constitutional Law.—Monopolies.*—The act of 1901 (§3312b et seq. Burns 1901), prohibiting discrimination by express companies in the receipt and carriage of goods, and providing a penalty for the violation thereof, is a legitimate exercise of the police power of the State, and is not violative of the fourteenth amendment of the Constitution of the United States, or of §21, article 1, of the state Constitution, as depriving such companies of their property without due process of law, since the act is to prevent the destruction of competition, and the exclusive possession by a few of the great fields of industry and enterprise. *pp. 344–347.*

SAME.—*Express Companies.—Discrimination.—Interstate Commerce.*—The act of 1901 (§3312b et seq. Burns 1901) prohibiting discrimination

by express companies in the carriage of merchandise is not invalid as an interference with interstate commerce.  *p. 347.*

CARRIERS.—*Express Companies.*—*Vested Rights.*—The act of 1879 (§3306 *et seq.* Burns 1901) in relation to express companies, requiring them, among other duties, to file a statement of the name and locality of the company, the amount of its capital, and an agreement authorizing suits to be brought against it in certain cases, did not give to companies complying with its requirements a vested right to carry on business subject only to the laws then existing and exempt from all future and further legislative control.  *p. 347.*

From Jackson Circuit Court; *T. B. Buskirk*, Judge.

Action by the State against the Adams Express Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*O. H. Montgomery, Albert Baker* and *Edward Daniels*, for appellant.

*C. W. Miller*, Attorney-General, *W. L. Taylor, S. M. Hudson, T. M. Honan, F. M. Trissal, J. H. Shea, T. J. Brooks* and *S. R. Hamill*, for State.

DOWLING, J.—This action was brought in the Jackson Circuit Court by the prosecuting attorney of that judicial circuit to recover from the appellants the penalty of $500 given by the act of March 7, 1901 (Acts 1901, p. 149, §§3312b-3312f Burns 1901), for an alleged violation of one of the provisions of the statute by the appellants. The defendants were described in the complaint as a copartnership and association of persons, whose names were unknown to the informant, engaged in business in said county as an express company. The specific charge against the defendants was that, at their office and agency at the city of Seymour, in said county, on May 29, 1901, they refused to receive from the Southern Indiana Express Company a certain package of merchandise and to complete the transportation and delivery of the same over their line from Seymour to Indianapolis without prepayment of the charge therefor, although at said date and agency said Adams Express Company, and other named express com-

panies doing business at said place, by custom and usage among themselves, received such packages from each other for carriage, and paid the charges of each preceding carrier, and completed the carriage of all such packages, the delivering carrier collecting the full charges and retaining them. It is alleged that, by refusing to receive the package and pay the accrued charges, the defendants denied to the Southern Indiana Express Company equal terms, facilities, accommodations, and usages in the receipt, carriage, continuance of carriage, and delivery of property usually carried by express companies, and thereby unlawfully discriminated against the said Southern Indiana Express Company, and became liable to forfeit and pay to the State the penalty of $500 named in the statute.

The defendants entered a special appearance to the action, and moved to set aside the service of the summons, for the reason that the defendants were sued as a copartnership, and that service of the writ was made only upon George S. Clark, agent of the defendants, and did not show that Clark was one of the copartners, such service not being authorized in this action. The motion to set aside the service was overruled. The defendants then moved to set aside the summons on the ground that the names of the defendants were not set out in the complaint, and that the clerk of the court was not authorized to issue the writ in the form adopted. This motion also was overruled. The defendants thereupon entered a full appearance, and demurred to the complaint upon two grounds: Want of jurisdiction of the persons of the defendants, and the insufficiency of the facts stated to constitute a cause of action. The demurrer was overruled. An answer in five paragraphs was filed, the first paragraph being a general denial.

The second paragraph of answer stated, in substance, that the defendants conducted their business with the other express companies mentioned in the complaint under special

traffic agreements, and that the Southern Indiana Express Company did not offer to pay the charges on the package offered by it for carriage, or to guarantee the payment of defendants' charges, or the repayment of the accrued charges if they should be paid by the defendants, nor did said Southern Indiana Express Company offer to put in force between it and the defendants an agreement as to through rating or express charges, and the division thereof, similar to the arrangements existing between the defendants and said other express companies. This paragraph concluded with the averment that if, under the act of March 7, 1901, *supra,* the defendants could be required to receive the said package, pay the accrued charges for carriage thereof, and carry the package to its destination, the statute was invalid, in that it contravened §8 of article 1, and §1 of the fourteenth amendment of the Constitution of the United States, and §§21 and 23 of article 1 of the Constitution of the State of Indiana.

The third paragraph of defendants' answer alleged that defendants were a joint-stock association or copartnership, not organized under the laws of Indiana, usually called an express company, and that defendants were regularly engaged, and had been since March 29, 1879, continuously, in the business of carrying money and property over and upon railroads in the State of Indiana, and agreeing to receive and receiving compensation therefor; that they were so engaged in said State before said date, when an Indiana statute in relation to foreign express companies (§§3306-3308 Burns 1901), whose title it quotes, was approved; that upon the taking effect of said act, and long before May 16, 1901, when the said Indiana act of that year took effect, defendants duly and fully complied with §2 of said act of 1879 (Acts 1879, p. 146) by executing and filing in the office of the recorder of said Jackson county the "agreement" mentioned in that section, authorizing process for defendants to be served upon their express

agents, and authorizing judgment thereon *in personam* against the defendant copartnership in such actions, and in the manner as is provided in said section; that continuously since the filing of said agreement defendant had, in pursuance of the rights and privileges secured to defendant by said act of 1879, enjoyed such rights and privileges in the transaction of defendants' express carrier business in Indiana and in said Jackson county; that on the 15th day of May, 1901, at midnight of said day, the Secretary of State of the State of Indiana certified as then in force said Indiana statute so approved March 7, 1901, whose title the answer quotes; that defendants' acceptance of the provisions of said act of March 29, 1879, became a contract between the defendants and the State of Indiana, which was, on May 15, 1901, and still is, in force, unless said act of March 7, 1901, which attempted a repeal of said act of 1879, and attempted to annex conditions to defendants' right and privilege to transact their express carrier business in Indiana different from those defined and authorized by the said act of 1879, be a valid statute of Indiana; that the right of the State to have and maintain this action rests wholly upon, and does not exist without, the provisions of said act of 1901; that that act is null and void because, under the facts pleaded, it violates §10 of article 1 of the Constitution of the United States, in that it impairs the obligation of said contract between the defendants and the State of Indiana.

The fourth paragraph of answer averred that the defendants were a copartnership, an association of persons, usually called an express company, and had been for five years in the business of carrying money and property over and upon railroads operated in Indiana and in said Jackson county, and receiving, and agreeing to receive, compensation for such carriage; that the Southern Indiana Express Company did tender to the defendants the express package mentioned in the complaint for continuance of

its carriage from said city of Seymour to destination, but that said tendering company did not pay or offer to pay defendants' charges for such carriage, and did demand from these defendants said tendering company's accrued charges for carrying said package to Seymour, and thereupon defendants declined to receive and carry said package and to advance said accrued charges; that said Southern Indiana Express Company was then a corporation organized and existing under the laws of the State of Indiana, but was not a responsible express company, nor an express company of any kind, because there never had been a statute of Indiana authorizing the incorporation of express companies; that said company, by its certificate of incorporation and articles of association, declared itself to be organized "in pursuance of the statutes of Indiana relating to voluntary associations and corporations," which articles were filed June 22, 1898, in the office of the Secretary of State of the State of Indiana, and there was then but one statute authorizing the incorporation of "forwarding" companies, viz., subsection 15, §1, of the voluntary association act of 1891, reading: "15. To organize forwarding and commission companies, and to own and operate wharf-boats in connection therewith, upon any of the rivers within or bordering upon the State of Indiana;" that said company was incorporated in pursuance of said subsection, and not otherwise; that it, in assuming to exercise the franchise of an express company common carrier, and transact an express carrier business, especially touching the express package mentioned in the complaint, acted wholly *ultra vires* its charter.

The fifth paragraph of defendants' answer averred that defendants were a copartnership composed of natural persons; that the State's right, if any, to have and maintain this action rests wholly upon §4 of the Indiana statute of March 7, 1901, whose title it quotes, and, without said section, the State can not maintain the action; that the

penalty prescribed in said section, and the offense it denounces, are respectively of such character that any judicial proceeding in which a defendant might be convicted of the offense, and thereupon have inflicted upon him such penalty, is in fact and in law of a criminal nature, and within the terms of §19 of article 1 of the Constitution of Indiana, which provides that in all criminal cases whatever the jury shall have the right to determine the law and the facts; that said section requires trials under it to be had as in civil actions, wherein the jury is the judge only of the facts, and that said §4 is void because it is in violation of §1 of the fourteenth amendment of the Constitution of the United States in that it denies natural persons composing express partnerships the equal protection of the laws.

Demurrers to the second, third, fourth, and fifth paragraphs of the answer were sustained.

The cause was submitted to the court for trial upon the issue formed by the general denial, and, at the request of the defendant, the court made a special finding, with its conclusions of law thereon, which finding and conclusions were as follows: (1) That the Adams Express Company is a copartnership and association of persons, whose individual names are unknown and could not be ascertained; (2) that said company, under the name of the Adams Express Company, is engaged in business in Jackson county, Indiana, as an express company, usually so called, and as such express company carries and transports money, merchandise, and other articles over and upon certain railroads operated in the State of Indiana, among others, over and upon the Pittsburgh, Cincinnati, Chicago & St. Louis railroad, which operates through the city of Seymour, Jackson county, State of Indiana, directly north to the city of Indianapolis, in the State of Indiana; (3) that said Adams Express Company receives and agrees to receive compensation for said services in carrying and transporting such

articles, and was so engaged on the 29th day of May, 1901, and for a long period prior thereto, without demanding compensation from the consignor in advance, but collecting and receiving it from the consignee; (4) that the Southern Indiana Express Company was, on the 29th day of May, 1901, a responsible express company, with a paid-up capital stock of $50,000, with no liabilities, incorporated under the laws of the State of Indiana under said name; (5) that said Southern Indiana Express Company was, on the 29th day of May, 1901, engaged in carriage of money, merchandise, and other articles over and upon the railroad of the Southern Indiana Railway Company; (6) that the said Southern Indiana Railway Company operated its lines from the city of Terre Haute to the town of Westport, in the State of Indiana, through the city of Seymour, in Jackson county, Indiana; (7) that the said Southern Indiana railway connected in the city of Seymour with the Pittsburgh, Cincinnati, Chicago & St. Louis railroad; (8) that on the 29th day of May, 1901, said Southern Indiana Express Company received at the station of Bedford, Indiana, on the line of said Southern Indiana railway, a package of merchandise of the value of $5, addressed and consigned to H. M. Smock of Indianapolis, Indiana, in the usual course of its business, without requiring from consignor the payment of the charges for making such carriage; (9) that on the said 29th day of May, 1901, the said Southern Indiana Express Company, by its agent at the city of Seymour, Indiana, tendered the said package, for continuance of carriage thereof to its destination at the city of Indianapolis, to the said Adams Express Company at its office and agency in the city of Seymour; (10) that the said Southern Indiana Express Company tendered to defendant, at its usual place of business and agency in the city of Seymour, said package, and demanded that defendant receive said package and pay said Southern Indiana Express Company the sum of twenty-five cents, its charges,

and transport the said package to the consignee at Indianapolis, collecting its [defendant's] charges (which were twenty-five cents), and charges advanced to the Southern Indiana Express Company from the consignee upon delivery of the package,—all of which defendant refused to do; (11) that after said refusal to receive said package said Southern Indiana Express Company tendered the same to defendant, and demanded that it transport said package over its line to Indianapolis, collecting from consignee its charges for the same, which charges are twenty-five cents; that defendant refused to receive said package, but required of said Southern Indiana Express Company that it pay its charges for said transportation—twenty-five cents—in advance; (12) that defendant and all other express companies had an established usage and custom by which they received goods, money, etc., from all consignors, including express companies at said agency and throughout the State of Indiana, without exacting prepayment of freight charges; that said custom and usage was denied to the said Southern Indiana Express Company; (13) that said Adams Express Company was on said date, and for a long time prior thereto had been, accustomed to and did receive, in its regular course of business, money, merchandise, and other articles from persons, corporations, and other express companies, for carriage over its said line to the city of Indianapolis, without requiring prepayment of charges; (14) that said Southern Indiana Express Company demanded that said Adams Express Company receive and carry said package and deliver it to the consignee at the city of Indianapolis, Indiana, where it had at said date an office and agency for receiving and delivering express matter from and to persons and corporations of said city; (15) that the said Adams Express Company then and there had and maintained its line of transportation between said city of Seymour and the said city of Indianapolis over the

said Pittsburgh, Cincinnati, Chicago & St. Louis railroad; (16) that the said Adams Express Company, upon said date, then and there refused to receive said package from the Southern Indiana Express Company, and refused to accept and complete the carriage and delivery thereof; (17) that on the said date, and long before the offering of said package to the said Adams Express Company, a custom and usage had been established, and then and there existed, between the said Adams Express Company, the American Express Company, the United States Express Company, the Wells-Fargo Express Company, the National Express Company, the Southern Express Company, and other express companies, with which it had and maintained business connections in said city of Indianapolis, and in the State of Indiana, to receive from each other, and to pay the charges of each preceding carrier and complete the carriage of all said packages, the delivering carrier receiving from the consignee and retaining all charges of each and all preceding carriers for the carriage thereof; (18) that on and for ten years prior to the 29th day of May, 1901, the said Adams Express Company maintained an office and agency in the city of Seymour, where it received from all persons and corporations money, goods, and merchandise for transportation over its said express line and its connecting lines, without demanding prepayment of its charges, but collecting the same from the consignee; (19) that at the city of Seymour defendant and an express company, to wit, the United States Express Company, operating over the Baltimore & Ohio Southwestern railroad, connected; that on the 29th day of May, 1901, and for ten years last past, as an established custom and usage, the two said express companies had exchanged packages and express matter; the defendant, at its office in Seymour, receiving from said United States Express Company such goods and packages as are usually carried by express companies for transportation to points on its own line, without

demanding, in advance, payment of its charges for transportation, but collecting the same from the consignee; and also at said office defendant was accustomed to receive, and by usage did receive, in the regular course of business at said office, express matter for transportation to points on its own line from the said United States Express Company without prepayment of its freight charges, and paying to said United States Express Company its charges for the carriage over its own line, and collecting from the consignee the total amount of its charges so advanced and its own accrued charges; (20) that the said Adams Express Company, by so refusing to receive and forward said package, did then and there refuse to grant the said Southern Indiana Express Company equal terms, facilities, accommodations, and usages in the receipt, carriage, continuance of carriage, and delivery of said package to its destination at said city of Indianapolis, and thereby unjustly discriminated against the said Southern Indiana Express Company.

And, as conclusions of law upon the facts, the court found: (1) That the Adams Express Company did then and there unlawfully refuse to grant to the said Southern Indiana Express Company equal terms, facilities, accommodations, and usages in the receipt, carriage, continuance of carriage, and delivery of property usually carried by express companies; (2) that the said Adams Express Company did then and there and thereby unlawfully discriminate against the said Southern Indiana Express Company, in refusing to receive and deliver said package to the said R. M. Smock; (3) that the law is with the plaintiff the State of Indiana, and entitles it to the relief prayed for in the complaint, and it ought to recover the sum of $500.

A motion by the defendants for a new trial was overruled, and judgment was rendered on the finding.

The errors assigned are upon the rulings of the court on the motions to set aside the service of the summons, and the summons itself, the rulings on the demurrers to the

complaint and answers, the several conclusions of law, and the denial of the motion for a new trial.

1.   Section 2 of the act of March 29, 1879 (Acts 1879, p. 146, §3307 Burns 1901), entitled "An act in relation to foreign express companies," etc., provides that all such copartnerships, associations of persons, joint-stock associations, or companies, shall file in the office of the recorder in each county in which their business is conducted, or where they may have an agency or office, a statement setting forth the name of such copartnership, association of persons, etc.   Section 3 of the same act declares that all such copartnerships, associations of persons, joint-stock associations, or companies may sue and maintain suits, and be sued and defend suits, in and by the name set forth in the statement required to be filed and recorded by the said act. This provision is a general one, and applies not only to suits brought by citizens or residents of this State having claims against such copartnerships, etc., engaged in the business of common carriers as express companies, arising out of transactions in this State with any agent or employe of such copartnership, etc., referred to in §2 of the act, but to all other actions, however arising, in which the copartnership, etc., is either the plaintiff or the defendant. It is by virtue of this section alone that an unincorporated association of this character can maintain an action in the courts of this State in its trade name.   Under these two sections, the appellant was described as a copartnership, under the name of the Adams Express Company, engaged in the business of a common carrier, and was properly sued in its name of the Adams Express Company.   The motions to quash the writ of summons, and to set aside the service of the same, were properly overruled.

The act of 1879, *supra*, applies not only to foreign companies, but to all copartnerships, associations, joint-stock associations, or companies not organized or incorporated under the laws of this State, usually called express com-

panies, engaged in the business of carrying or transporting money, merchandise, etc. In a suit against such a company by its trade name, it is not necessary to allege that it has filed the statement required by §2 of that act. If it has not done so, or, having filed a statement showing its trade name, if it wishes to take advantage of the defense that it is sued by the wrong name, such defense should be set up by answer in abatement. *Peden* v. *King,* 30 Ind. 181; *McCrory* v. *Anderson,* 103 Ind. 12; *Louisville, etc., R. Co.* v. *Caldwell,* 98 Ind. 245, 249.

The complaint alleged that the defendants were "a co-partnership and association" engaged in the business of carrying money, merchandise, etc., in this State. This being the case, the persons so engaged in that business were bound to file, in the office of the recorder of each county where they had an office or agency, a statement of the name by which they were to sue and be sued. Without this they could not lawfully engage in business at all. The law presumes that persons so situated do their duty, and it was no more necessary to aver that these copartners had complied with the law and filed a statement of their trade name than it is to aver, in an action against a domestic corporation, that it has filed its articles of association in the proper public offices. *Walker* v. *Shelbyville, etc., Turnpike Co.,* 80 Ind. 452-454; *Heaston* v. *Cincinnati, etc., R. Co.,* 16 Ind. 275, 278, 79 Am. Dec. 430; Thompson, Corporations, §1825. See, also, §310 Burns 1901; *Rauber* v. *Whitney,* 125 Ind. 216.

2. The first objection taken to the complaint is that the Southern Indiana Express Company, described in the pleading as "a responsible express company * * * incorporated under the laws of the State of Indiana," and to which the rights secured by the act of 1901 were alleged to have been denied, could not have had a legal existence because there is no statute of this State under which a corporation for the purpose of doing business as a common

carrier of goods over the railroads of this State, generally known as an express company, could be organized. The point is without merit. The act of 1879 declared all copartnerships, associations, joint-stock associations, and companies engaged in that business to be common carriers, and authorized them to carry on trade, and to sue and be sued by the name adopted by such copartnership, etc. It was not necessary that such companies should be incorporated. If they attempted to incorporate, but failed for the reason that the statutes did not authorize such incorporation, they would nevertheless remain common carriers, competent to carry on business as such, and entitled to the protection of the act of 1901. The allegation that the Southern Indiana Express Company was "incorporated under the laws of the State of Indiana," may be rejected as surplusage. It was sufficient for the purposes of the complaint to allege that it was a responsible express company engaged in the business of a common carrier over the railroads of this State.

The object of the act of 1901, *supra,* was to prevent unfair or unjust discriminations by one express company or combination of express companies acting as common carriers in this State against any consignor or other responsible company engaged in the same business, and to secure to all consignors, including other responsible express companies, equal terms, facilities, accommodations, and usages in the receipt, carriage, continuance of carriage, and delivery of money and property usually carried by express companies. To this end the act prohibited the granting by such companies to any one carrier, class, or combination of carriers, any terms, credit, privileges, advantages, usages, accommodations, or facilities in the receipt, transmission, or delivery of express matter which they did not grant to all others.

The charge in the complaint was that the appellant had refused to receive and carry the package described, and to accept and complete the carriage and delivery thereof, to

pay the charges of each preceding carrier, and to collect at the place of delivery the full charges for the transportation of the package, although it was its custom and usage at that point so to do with the American Express Company and other express companies. It is contended by counsel for appellant that the complaint did not show that the advantages or facilities which the appellant denied to the consignor named were those which were extended by the appellant to other express companies at that agency. The allegations of the complaint can not be so understood. A particular custom and usage in such transactions between the appellant and other express companies was alleged, and the complaint charged that the appellant refused to receive and carry the package tendered by the consignor upon the terms established by such custom and usage. This was sufficient.

The validity of §4 of the act of 1901, on which the action is founded, is attacked upon various constitutional grounds, but none of these objections can be allowed.

The act does not violate §22 of article 4 of the state Constitution forbidding the passage of local or special laws for the punishment of crimes and misdemeanors. Section 4 of the act of 1901 in question does not make any breach of the statute a misdemeanor. It declares certain acts unlawful, and provides a penalty for every such transgression. But the recovery of the penalty must be by a civil action, and not by a criminal proceeding. In no event can there be imprisonment either for a violation of the act or for a failure to pay or stay the judgment for the penalty. In this respect the act stands upon the same footing as the blackboard act, the mortgage satisfaction act, etc. *State* v. *Indiana, etc., R. Co.,* 133 Ind. 69, 83-85, 18 L. R. A. 502; *Pennsylvania Co.* v. *State,* 142 Ind. 428; *Judy* v. *Thompson,* 156 Ind. 533.

Crimes and misdemeanors in this State are such wrongs of a public nature as are punished by criminal proceed-

ings in the name of the State. The charges must be preferred upon oath in the form of an affidavit, information, or indictment. The process is a warrant, and it is served by arresting the person of the defendant. The punishment, in all except capital cases, is by fine or imprisonment or disfranchisement, or by two or more of these, and whenever it is by fine only, the defendant stands committed until the fine is paid, or bail is entered.

The provision of §16 of article 1 of the state Constitution, that all penalties shall be proportioned to the nature of the offense, has reference to criminal proceedings; but, were it otherwise, we could not say that in dealing with a subject involving such large and important public interests as the prevention of unfair traffic discriminations among themselves by common carriers, a penalty of $500 was out of proportion to the nature of the offense against which it was denounced.

It is next insisted by counsel for appellant that as the consignor in this case was not entitled at common law to such an interchange of business as is described in the complaint, and the appellant had the right to demand prepayment of its charges, such right to demand or waive prepayment was property, and the statute, by depriving the appellant of the right to elect when and of whom it would demand prepayment of its charges, deprived it of this property without due process of law, and therefore violated the fourteenth amendment of the Constitution of the United States, and also §21 of article 1 of the Constitution of this State.

A further objection urged by counsel is that the requirement of equal facilities, credit, etc., to all carriers, deprives express companies of liberty without due process of law.

The statute of May 15, 1901, was enacted by the legislature in the legitimate exercise of its police power for the protection of the public welfare. The state Constitution itself declares (§1, article 1) that all free governments are,

and of right ought to be, instituted for the peace, safety, and well-being of the people. If this is the chief end of a government which is carried on by and through the agency of laws, it follows that the legislature may and must, from time to time, enact such measures as the well-being of the people of the State requires. Great interests which have grown up and which closely and seriously affect the commercial convenience and prosperity of all the people of the State—interests which, in their present form and dimensions, were unknown to the common law—are both proper and necessary subjects of police protection, regulation, and control. It can not be safely admitted that these vast and powerful agencies, by and through which a large part of the carrying trade of the people of the State is conducted, are beyond the control of the legislature. The well-being of the people demands that they shall at all times be subject to the rein and curb of the law, and that their methods of conducting their business must conform to those principles of fairness and justice with which the interests of the public are inseparably bound up. The relations of such agencies to the public and to each other, and an authoritative declaration and definition of their duties and obligations, are clearly within the scope of legislative authority wherever important public interests are involved, and this principle applies whether such agencies are corporations, *quasi* corporations, or copartnerships acting as common carriers.

The purpose of the statute was to prevent express companies and other common carriers doing business in this State from unfairly and unjustly discriminating against other persons or corporations engaged in the same business, by extending to some carriers advantages and facilities which were denied to others. Of late years many important enactments of this character, State and federal, have been found necessary for the protection of the interests of the people. All rules, practices, customs, and usages de-

signed to destroy competition in business, or necessarily having that effect, are inimical to the public well-being, and were condemned by the common law. The act under examination belongs to that class of legislation which has been found necessary to prevent the destruction of competition, and the exclusive possession by a few of the great fields of industry and enterprise. It has never been denied that in the exercise of the police power, property rights may be sacrificed, natural privileges curtailed, and liberty restricted or taken away. As the public peace, safety, and well-being are the very end and object of free government, legislation which is necessary for the protection and furtherance of this object can not be defeated on the ground that it interferes with the common law rights of some of the citizens, or even deprives them of such rights. *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Lawton* v. *Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; *Barbier* v. *Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Kidd* v. *Pearson,* 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; *State* v. *Harrington,* 68 Vt. 622, 35 Atl. 515, 34 L. R. A. 100; *In re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572; *Atchison, etc., R. Co.* v. *Denver, etc., R. Co.,* 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291; *Wisconsin, etc., Railroad* v. *Jacobson,* 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194; *Walker* v. *Jameson,* 140 Ind. 591, 28 L. R. A. 679, 49 Am. St. 222; *Chicago, etc., R. Co.* v. *Wolcott,* 141 Ind. 267; *Parks* v. *State,* 159 Ind. 211, 59 L. R. A. 190; Cooley, Const. Lim., 594; Black, Const. Law, 298, 310; Tiedeman, Police Power, 227, 245, and cases cited in note 1.

In the case before us, we find no unlawful invasion of the constitutional rights of the appellant. The act compelled it to make no payment of the charges of any preceding carrier, nor to enter into any special traffic arrangements with it. Its just and reasonable requirement was

that each carrier should extend the same facilities and advantages to all, and that it should discriminate against none. If a carrier agrees with another that it will pay the charges of the preceding carriers, such arrangement is entirely voluntary. The statute neither requires nor prohibits it. But the law does insist that the carrier shall receive and carry upon the same terms merchandise or other articles delivered to it by other consignors or express companies. *Central Union Tel. Co.* v. *Fehring,* 146 Ind. 189; *Central, etc., Tel. Co.* v. *State, ex rel.,* 118 Ind. 194, 10 Am. St. 114.

Neither did the law exact from the appellant obligations and duties not exacted from the Southern Indiana Express Company. It applied equally to both, and each could demand from the other the benefit of any and all facilities, customs, usages, terms, and credits which such other allowed to its most favored patrons.

The objection that the act of 1901 is invalid because it interferes with interstate commerce is wholly unsupported. Besides, no such question is presented by the record. The package which the appellant refused to receive and carry was sent from Bedford, Lawrence county, in this State, and was to be delivered at Indianapolis.

The act of 1879 (Acts 1879, p. 148, §3306 *et seq.* Burns 1901), in relation to foreign express companies, and requiring them, among other duties, to file a statement of the name and locality of the company, the amount of its capital, and an agreement authorizing suits to be brought against it in certain cases, did not give to companies complying with its requirements a vested right to carry on business subject only to the laws then existing, and exempt from all future and further legislative control.

It is not necessary that we should consider separately the questions arising upon the demurrers to the answers. These pleadings, with the arguments of counsel supporting

them, and the authorities cited, have received careful attention, but we found in none of them a sufficient defense to this action.

The several conclusions of law were in harmony with the views expressed in this opinion, and we are unable to say that any controlling finding of fact was not sustained by the evidence or was contrary to law.

For the reason stated elsewhere in this opinion, the court did not err in excluding the certified copy of the articles of association of the Southern Indiana Express Company, offered in evidence by the appellant.

We find no error.   Judgment affirmed.