IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1911, AND MAY
TERM, 1912, IN THE NINETY-SIXTH YEAR
OF THE STATE.

---

## HIRTH-KRAUSE COMPANY ET AL. *v.* COHEN ET AL.

[No. 21,934. Filed January 12, 1912.]

1. STATUTES. — *Construction.* — *Statutes Adopted from Another State.*—Where a statute of this State is a substantial copy of that of another state and which, prior to the adoption in this State, had been construed by the courts of such other state, the legislature is presumed to have adopted the construction placed thereon by the courts as to the legislative intent and purpose of the act, and as to the evils against which the legislation was aimed. p. 9.

2. CONSTITUTIONAL LAW.—*Police Power in General.*—*Bulk Sales Law.*—The State under its police power has the right to regulate any and all kinds of business to protect the public health, morals and welfare, subject to the restrictions of reasonable classification, and the protection of creditors against fraudulent sales and conveyances is a proper subject for the exercise of such police power. p. 10.

3. CONSTITUTIONAL LAW.—*Subject of Legislation.*—*Classification.* —A classification of the subjects of legislation must have a reasonable basis on which to stand, and must operate equally upon all and embrace all within the class, and the reason for the classification must inhere in the subject-matter and must be natural and substantial. p. 10.

4. CONSTITUTINAL LAW.—*Police Power in General.*—*Privileges and Immunities.*—*Bulk Sales Law.*—The bulk sales law (Acts 1909 p. 122) is a proper exercise of the police power of the State and is not violative of the privileges and immunities section of the Constitution. p. 10.

5. CONSTITUTIONAL LAW.—*Distribution of Powers.—Legislative Powers.—Determining Policy and Expediency of Statute.*—It is for the legislature, within certain limitations, to judge of the policy and expediency of a law, if it has the constitutional power to enact it.  p. 12.

6. CONSTITUTIONAL LAW.—*Personal Rights.—Right to Contract.— Bulk Sales Law.*—The bulk sales law of 1909 (Acts 1909 p. 122) does not violate article 1, §1, of the Constitution because of its restrictions on merchants of the right to contract.  p. 12.

7. CONSTITUTIONAL LAW.—*Operation and Effect of Statute.—Bulk Sales Law.*—The bulk sales law of 1909 (Acts 1909 p. 122) operates in all parts of the State in the same way and under the same circumstances and conditions, and is not in violation of article 4, §23, of the Constitution.  p. 13.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by Hirth-Krause Company and another against Philip Cohen and others. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*Thad M. Talcott, Jr., Newberger, Richards, Simon* and *Davis,* for appellants.

*Stuart MacKibbin, F. J. Lewis Meyer,* for appellees.

MORRIS, C. J.—Suit by appellants against appellees, under the bulk-sales act of 1909 (Acts 1909 p. 122).

The circuit court sustained a demurrer to the complaint, and appellants declined to plead further. From the judgment rendered, this appeal is prosecuted. The only error assigned here is the sustaining of the demurrer to the complaint.

The action of the lower court was based on the theory that the foregoing act is unconstitutional. Only the one question is involved in the appeal. If the act is constitutional, the judgment should be reversed; otherwise it should be affirmed.

The act in question is a substantial copy of an act passed by the legislature of the State of Michigan in 1905. Michigan Public Acts 1905 p. 322.

In *Spurr* v. *Travis* (1906), 145 Mich. 721, 108 N. W. 1090,

116 Am. St. 330, the supreme court of Michigan held that the act did not violate the constitution of that state. In *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.* (1908), 151 Mich. 478, 115 N. W. 409, the same court held that the act was not in conflict with any of the provisions of the Michigan constitution, or of §1 of the 14th amendment to the Constitution of the United States. The plaintiffs in error carried that case to the Supreme Court of the United States, which held that the Michigan law was based on a proper and reasonable classification, and did not violate the 14th amendment to the federal Constitution. *Kidd, Dater & Price Co.* v. *Musselman Grocer Co.* (1910), 217 U. S. 461, 30 Sup. Ct. 606, 54 L. Ed. 839. In thus holding, the court followed its previous ruling, made in the case of *Lemieux* v. *Young* (1909), 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295, which involved the same question with reference to a similar statute of Connecticut. In the latter case it is said: ''That the court below was right in holding that the subject with which the statute dealt was within the lawful scope of the police authority of the state, we think is too clear to require discussion. As pointed out by Vann, J., in a dissenting opinion delivered by him in *Wright* v. *Hart* [1905], 182 N. Y. 330, 350, 75 N. E. 404, 2 L. R. A. (N. S.) 338, the subject has been, with great unanimity, considered not only to be within the police power, but as requiring an exertion of such power.''

In its opinion in *Spurr* v. *Travis, supra,* the court said: ''It is contended that the act is class legislation for two reasons: (1) Because it limits its operation to merchants and does not include farmers, manufacturers, etc.; and (2) that it does not relate to merchants who owe no debts. A sufficient reason for not including within its provisions merchants who owe no debts is found in the apparent purpose of the act, which is to protect creditors. If there be no creditor, there is no one requiring protection. It would be a novel application of the doctrine which forbids class

legislation to hold that creditors of such merchants as have creditors may not be protected by regulation of transfers by such merchants because the provisions cannot properly be made applicable to others having no creditors. Nor is it class legislation within the meaning of this term as used to express an unconstitutional exercise of power to limit the application of the act to a particular calling or relation. *People* v. *Bellet* [1894], 99 Mich. 151, 57 N. W. 1094, 22 L. R. A. 696, 41 Am. St. 589. In Cooley, Const. Lim. (7th ed.) 554, it is said: 'Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application; they may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers or traders, and the like. * * * If the laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge.' See, also, *McDaniels* v. *J. J. Connelly Shoe Co.* [1902], 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. 889. It is easy to discover reasons for apprehending and guarding against fraudulent disposition of stocks of merchandise by debtor owners which would not relate to other species of property. As was said in the case cited above: 'It is well known that the business of retailing goods, wares and merchandise is conducted largely upon credit, and furnishes an opportunity for the commission of frauds upon creditors not usual in other classes of business.' The act is not class legislation. * * * Does the act conflict with §32 of article 6 of the constitution? It may be conceded that an act which should prohibit the sale of property of any character, either generally or for a stated time, without any adequate purpose or object, would constitute such an interference with the property and liberty of the individual as is inhibited by this section. The courts have, however, never

treated this or similar provisions as prohibitive of legislation in the exercise of the police power which regulates the manner of the use or disposition of property, even though a temporary inconvenience may be suffered by the owner. An illustration of this is afforded by the laws providing liens in favor of mechanics. Many other illustrations might be given, but it is, we think, safe to state, as a general rule, that where, in the exercise of the police power, a beneficent result is sought, and legislation is enacted in protection of rights which would, but for the enactment, be subject to defeat, such legislation does not infringe the liberty of the citizen in a legal sense or deprive him of property because it involves regulations which may postpone for a reasonable time the exercise of his right to sell. It is to be noted that in case of an owner who owes no debts no delay is required. A sale may be had at once. The owner of merchandise who is also a debtor may at once qualify himself to make a sale by discharging his indebtedness, but, if he does not, this act postpones the sale until notice is given to the creditors. In our belief this is within the police power, and does not constitute an unconstitutional invasion of liberty or property rights. Laws similar to the one under consideration have been enacted in twenty states of the Union. This is significant of a general belief that transfers of the character sought to be regulated afford peculiar opportunities for the perpetration of fraud upon creditors. While this general course of legislation in sister states is in no sense controlling, it may afford evidence of a concensus of opinion that some legislation is necessary to meet a manifest, if not a growing, evil.''

Article 6, §32, of the Michigan constitution provides: ''No person shall  *  *  *  be deprived of life, liberty or property, without due process of law.''

In *Attorney-General, ex rel.,* v. *Jochim* (1894), 99 Mich. 358, 58 N. W. 611, 23 L. R. A. 699, 41 Am. St. 606, the supreme court of that state held: ''The words 'due process

of law', as used in the constitution (Article 6, §32), mean the law of the land, by which are to be understood laws which are general in their operation, and not special acts of legislation passed to affect the rights of particular individuals against their will, and in a way in which the same rights of other persons are not affected by existing laws. *Sears* v. *Cottrell* [1858], 5 Mich. 250.''

It thus appears that the Michigan courts have construed article 6, §32, of their constitution as covering practically the same field as article 1, §23, of our Constitution.

In *Kidd, Dater & Price Co.* v. *Musselman Grocer Co.,* *supra,* Mr. Justice White delivered the opinion of the court. In the course of the opinion it is said: ''The errors assigned embody the proposition that the sales-in-bulk act in question was not a valid exercise of the police powers of the state, and is hence repugnant to the 14th Amendment, because wanting in due process of law and denying the equal protection of the laws. Substantially the same arguments are urged as were presented in *Lemieux* v. *Young* [1909], 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295, decided after this writ of error was sued out. In the Lemieux case, the validity of legislation of the general character of that embodied in the Michigan statute was passed on. The Connecticut law, the constitutionality of which was particularly involved, was held to be a valid exercise of the police power of the state, and not to be repugnant to the due process or equal protection clauses of the 14th Amendment, although it avoided as against creditors sales by retail dealers in commodities of their entire stock at a single transaction, and not in the regular course of business, unless notice of intention to make such sale was recorded seven days before its consummation. The opinion in that case thus concluded: 'As the subject to which the statute relates was clearly within the police powers of the state, the statute cannot be held to be repugnant to the due process clause of the 14th Amendment, because of the nature or character of the regulations which

the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of power. *Booth* v. *Illinois* [1902], 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623. This, we think, is clearly not the case. So, also, as the statute makes a classification based upon a reasonable distinction, and one which, as we have seen, has been generally applied in the exertion of the police power over the subject, there is no foundation for the proposition that the result of the enforcement of the statute will be to deny the equal protection of the laws.' These principles are decisive against the contentions made in this case, as we do not find in the provisions of the Michigan statute when compared with the Connecticut statute such differences as would warrant us in holding that the regulations of the Michigan statute are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of power. The purpose of both statutes is the same, viz., to prevent the defrauding of creditors by the secret sale of substantially all of a merchant's stock of goods in bulk, and both require notice of such sale and make void as to creditors a sale without notice. * * * We do not deem it necessary to further pursue the subject, as we think it clearly results, from the ruling in *Lemieux* v. *Young,* that the Michigan statute in no way offends against the Constitution of the United States, and therefore that the court below was right in so deciding.''

The portion of the 14th amendment involved above reads as follows: ''No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

Section 1 of our statute (Acts 1909 p. 122), which contains the provisions in question here, reads as follows: ''The

sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferor, or assignor, shall be void as against the creditors of the seller, transferor, assignor, unless the seller, transferor, assignor and purchaser, transferee and assignee shall at least five days before the sale make a full detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, transferor and assignor of each article to be included in the sale; and unless the purchaser, transferee and assignee, demand and receive from the seller, transferor and assignor a written list of names and addresses of the creditors of the seller, transferor, and assignor, with the amount of indebtedness due or owing to each, and certified by the seller, transferor and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by register mail, every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof.''

Counsel for appellee contend that this statute is invalid, because it violates article 1, §§1, 23, and article 4, §23, of the Constitution of Indiana. These sections read as follows:

Article 1, §1. ''We declare that all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the people; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement

of these ends, the people have, at all times, an indefeasable right to alter and reform their government."

Article 1, §23. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Article 4, §23. "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

The principal question arises out of the proper construction of article 1, §23, of our Constitution.

Counsel for appellee contend that while the act is a proper exercise of the police power of the State within the 14th amendment to the federal Constitution, it nevertheless is violative of article 1, §23, of our Constitution, because it grants special privileges to merchant creditors and imposes special disabilities on merchants, regardless of their solvency; because the classification is arbitrary, and the reason therefor is not inherent in the subject-matter of the act, and because the act does not embrace all within the class to which it is naturally related.

It is also claimed that the act impairs the right of merchants to contract, guaranteed by article 1, §1, of our Constitution, and further that it is a special law within the prohibition of article 4, §23, of our Constitution.

The act here in question is a substantial copy of the Michigan act, and was adopted by our General Assembly after it was construed by the Michigan supreme court

1. in *Spurr* v. *Travis, supra.* By such adoption, our legislature presumably adopted the construction made by the Michigan supreme court as to the legislative intent and purpose of the act, and as to the evils against which the legislation was aimed. *Robertson* v. *Ford* (1905), 164 Ind. 538, 74 N. E. 1; *Bowman* v. *Conn* (1856), 8 Ind. 58;

*Clark* v. *Jeffersonville, etc., R. Co.* (1873), 44 Ind. 248; *Jarvis* v. *Hitch* (1903), 161 Ind. 217, 67 N. E. 1057. The evils against which the law was directed, and the intent and purpose of the Michigan statute, are set out in the portion of the opinion heretofore quoted, and need not be repeated here.

The state under its police power has the right to regulate any and all kinds of business to protect the public health, morals and welfare, subject to the restrictions of

2.   reasonable classification. *Walker* v. *Jameson* (1894), 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 49 Am. St. 222; *Adams Express Co.* v. *State* ·(1903), 161 Ind. 328, 67 N. E. 1033; *Seelyville Coal etc., Co.* v. *McGlosson* (1906), 166 Ind. 561, 77 N. E. 1044, 117 Am. St. 396; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823; *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114, 33 L. R. A. (N. S.) 973. It follows that the protection of creditors against fraudulent sales and conveyances is a proper subject for the exercise of the police power of the state.

It is well settled however, that in making a classification of the subjects of legislation, the classification must have some reasonable basis on which to stand, and must operate

3.   equally on all within the class, and the reason for the classification must inhere in the subject-matter, and must be natural and substantial. A proper classification must also embrace all within the class to which it naturally belongs. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Selvage* v. *Talbott, supra.*

The provisions of article 1, §23, of our Constitution, so far as the question here involved is concerned, are substantially the same as the privileges and immunities clause

4.   of §1 of the 14th amendment to the Constitution of the United States, and as the act from which the act in question was copied, has been held by the Supreme Court

of the United States not violative of the 14th amendment, we are constrained to hold it does not violate the privileges and immunities section of our Constitution, but, on the other hand, is a proper exercise of the police power of the State. *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 651, 91 N. E. 242; *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 9, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. 300.

The classification here does not violate our organic law. This court has sustained acts requiring transient merchants to procure a license *(Levy* v. *State* [1903], 161 Ind. 251, 68 N. E. 172), requiring miners wages to be paid at certain times, in lawful money *(Hancock* v. *Yaden* [1890], 121 Ind. 366, 23 N. E. 253, 6 L. R. A. 576, 16 Am. St. 396), prohibiting persons from Sunday base-ball playing, under certain conditions *(State* v. *Hogreiver* [1899], 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504), requiring mortgagees of household goods to execute receipts for payments on mortgage, and invalidating mortgage for failure to execute receipts *(Zumpfe* v. *Gentry* [1899], 153 Ind. 219, 54 N. E. 805), requiring manufacturers of iron, and others, to pay employes at stated intervals *(Seelyville Coal, etc., Co.* v. *McGlosson, supra)*, requiring contracts for commissions for sale of real estate to be in writing *(Selvage* v. *Talbott, supra)*, restricting the business of junk dealers *(Grossman* v. *City of Indianapolis* [1909], 173 Ind. 157, 88 N. E. 945, 89 N. E. 862). Other examples of restrictions on the transaction of certain classes of business, that have been upheld by this court as within the proper exercise of the police power of the State, might be mentioned.

In *McKinster* v. *Sager* (1904), 163 Ind. 671, 72 N. E. 854, 68 L. R. A. 273, 106 Am. St. 268, this court held the bulk-sale act of 1903 (Acts 1903 p. 276) violative of the 14th amendment of the federal Constitution, and intimated, but did not expressly decide, that it was in conflict with our own Constitution. That act excluded from the benefits thereof all creditors of the merchant, except merchandise ones, and

this court held that this classification was too narrow, and, therefore, violated the 14th amendment.

The act of 1909, *supra,* is free from that objection, because it embraces all the creditors of the merchant.

Though some of the provisions of the act may appear unjust and burdensome, particularly those which impose on the solvent merchant the same restrictions as on the insolvent one, it must be remembered that, within certain limitations, it is for the legislature to judge of the policy and expediency of a law, if, in other respects, it has the constitutional power to enact it. *Squire* v. *Tellier* (1904), 185 Mass. 18, 69 N. E. 312, 102 Am. St. 322; *Levy* v. *State, supra.*

Courts may not strike down laws merely because they are unwise, or impose hardships and inconvenience on persons engaged in certain occupations. *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *State* v. *Richcreek* (1906), 167 Ind. 217, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. 491; *Barrett* v. *Millikan* (1901), 156 Ind. 510, 60 N. E. 310, 83 Am. St. 220.

Unless the imposition of such burdens and inconveniences is prohibited by the organic law, relief therefrom can only come from the legislative department of our government.

We cannot agree with counsel for appellee, that the act violates article 1, §1, of the Indiana Constitution, because of its restrictions on merchants of the right to contract.

In *Hancock* v. *Yaden, supra,* on page 369, this court said: "But the right to contract is not and never has been in any country where, as in ours, the common law prevails and constitutes the source of all civil law, entirely beyond legislative control."

It would be useless to enumerate the lawful restrictions on the right to contract recognized by our law. To the long list of such restrictions, set out in the opinion in *Hancock* v.

*Yaden, supra,* it is sufficient to say that very many more might be added.

Nor is the act in violation of article 4, §23, of our Constitution. It operates in all parts of the State in the same way and under the same circumstances and conditions. *Consumers Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505.

Laws similar to this one are in operation in thirty states of the Union, and also in the District of Columbia. This is very strong evidence of the general recognition of the evil aimed at by this enactment. It is proper to say that in the cases of *Block & Griff* v. *Schwartz* (1904), 27 Utah 387, 76 Pac. 22, 65 L. R. A. 308, 101 Am. St. 971; *Miller* v. *Crawford* (1904), 70 Ohio St. 207, 71 N. E. 631; *Wright* v. *Hart, supra,* and *Off & Co.* v. *Morehead* (1908), 235 Ill. 40, 85 N. E. 264, 20 L. R. A. (N. S.) 167, 126 Am. St. 184, statutes, similar in the main, to this one, were held unconstitutional. These decisions, however, were rendered previous to the decision of the United States Supreme Court in *Lemieux* v. *Young, supra.*

Inasmuch as the statute in question is not in violation of the Indiana Constitution, the lower court erred in sustaining the demurrer. Judgment reversed, with instructions to overrule appellees' demurrer to the complaint.

NOTE.—Reported in 97 N. E. 1, and for other cases see notes therein. See, also, under (1) 36 Cyc. 1154-81; (2) 8 Cyc. 864-62; 25 Am. St. 870; 54 Am. St. 807; Ann. Cas. 1912 A. 490; Ann. Cas. 1912 C. 972; 2 L. R. A. (N. S.) 331 and 20 L. R. A. (N. S.) 160; (3) 8 Cyc. 1051; (4) 8 Cyc. Ann. 1056 new; 20 Cyc. Ann. 449 new; 1 Ann. Cas. 557; 14 Ann. Cas. 437; Ann. Cas. 1912 C. 706; (5) 8 Cyc. 851-38; (6) 8 Cyc. 887-4; 20 Cyc. 449; (7) 36 Cyc. 993-93. On the question of applicability of statutes relating to sales of stocks of goods in bulk to transfer in payment of a creditor see note in 12 L. R. A. (N. S.) 174, and as to remedy of creditors where sale is made in violation of bulk sales law, see note in 39 L. R. A. (N. S.) 374.