AMERICAN EXPRESS COMPANY *v.* SOUTHERN INDIANA EXPRESS COMPANY.

[No. 20,441.   Filed November 1, 1906.]

1. CONSTITUTIONAL LAW.—*Fourteenth Amendment.—Statutes.— Carriers.—Express Companies.*—Sections one and four of the act of 1901 (Acts 1901, p. 149, §§3312b, 3312e Burns 1901), providing for the equal treatment of express companies by one another in this State, and for penalties for failure or refusal by any such companies to treat others on equal terms, are not

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

in violation of the fourteenth amendment of the federal Constitution, providing for equal rights and for due process of law. *Adams Express Co.* v. *State,* 161 Ind. 328, followed. pp. 308, 313.

2. INJUNCTION. — *Express Companies.—Discrimination.—Statutes.*—Injunction lies, by virtue of §3312e Burns 1901, Acts 1901, p. 149, §4, to compel defendant express company to grant to plaintiff express company the same terms and privileges in the carriage of plaintiff's express matter, which defendant grants to other companies. pp. 309, 315.

3. EQUITY.—*Enlarging Jurisdiction.—Legislative Powers.*—The legislature has the power to enlarge the jurisdiction of the courts of equity. p. 310.

4. CARRIERS.—*Express Companies.—Rates.—Common-Law Duties.*—At the common law, express companies were under no obligation to treat all customers alike. p. 311.

5. COMMON LAW.—*Insufficiency of, to Meet Modern Requirements.*—While, formerly, the common law was elastic enough to provide a remedy for flagrant injustice, it has not in modern times kept abreast of progress; and the legislature has been compelled to supply new remedies to meet existing conditions. p. 311.

6. CARRIERS.—*Express Companies.—Prepayment of Charges.— Waiver.—Statutes.*—Section 3312b Burns 1901, Acts 1901, p. 149, §1, does not compel defendant express company to prepay charges on packages received from other companies, but does require defendant to do so for plaintiff, where it does so for other express companies, defendant's prepayment as to the others being a waiver of its right to refuse to prepay for plaintiff's packages. pp. 311, 313.

7. COMPETITION.—*Public Policy.—Common Law.*—All usages, customs, rules and practices designed to prevent competition are contrary to public policy and were condemned by the common law. p. 312.

8. POLICE POWER.—*Liberty.—Property.*—The state may in the proper exercise of the police power sacrifice the property of individuals, curtail natural privileges, and restrict, or entirely take away, the liberty of the citizen. p. 312.

9. COMMERCE.—*Interstate.—What is.*—State laws which may to some extent affect interstate commerce are not necessarily bad on the ground that they regulate interstate commerce. p. 313.

10. CONTRACTS.—*Right of.—Legislative Power.*—The right to contract may be restricted by the legislature, or in some cases, may be prohibited. p. 314.

American Express Co. v. Southern Ind. Express Co.—167 Ind. 292.

11. PLEADING.—*Argumentative Denial.*—*Sustaining Demurrer to.*—*Appeal and Error.*—Sustaining a demurrer to argumentative denials, is harmless error where the general denial was pleaded. p. 314.

12. JUDGMENT.—*Motion to Modify.*—*Express Companies.*—*Equal Privileges.*—*Statutes.*—A decree commanding defendant express company to grant certain specified privileges and terms to plaintiff express company, such privileges and terms being the same voluntarily yielded by defendant to other express companies, is warranted by §3312e Burns 1901, Acts 1901, p. 149, §4. p. 315.

13. CONSTITUTIONAL LAW.—*Carriers.*—*Express Companies.*—*Discrimination.*—Sections one and four of the act of 1901 (Acts 1901, p. 149, §§3312b, 3312e Burns 1901), providing for equal treatment by express companies of one another in this State and for a penalty for a violation of the provisions thereof, are not in violation of the federal Constitution, article 1, §8, providing that the federal congress shall regulate interstate commerce, or section one of the fourteenth amendment, or article 1, §§21, 23, of the state Constitution, providing for equal rights and due process of law. p. 315.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Suit by the Southern Indiana Express Company against the American Express Company. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Matson & Giles* and *Baker & Daniels,* for appellant.

*F. M. Trissal, J. H. Shea* and *Brooks & Brooks,* for appellee.

JORDAN, C. J.—Appellee company, as plaintiff below, on May 31, 1901, commenced this suit under an act of the legislature, approved March 7, 1901 (Acts 1901, p. 149, §§1, 4, §§3312b, 3312e Burns 1901), to secure an injunction compelling appellant to extend to said plaintiff like facilities, terms, privileges, advantages, and usages in the receiving, transmission and delivery of express matter within the State of Indiana which said defendant had granted to all other express companies.

On May 12, 1902, plaintiff filed an amended complaint in two paragraphs. The defendant unsuccessfully demurred to each of these paragraphs on the grounds: (1) That the court had no jurisdiction over the person of the defendant; (2) that the plaintiff had no legal capacity to sue; (3) that the paragraphs did not state facts sufficient to constitute a cause of action. Thereupon defendant filed its answer in five paragraphs, the first of which was the general denial. A demurrer for want of facts was sustained to each of the paragraphs of the answer except the first. On February 19, 1904, the cause was tried by the court on the issues joined upon the amended complaint and the answer of general denial. There was a general finding in favor of the plaintiff, and the court awarded a decree, enjoining and prohibiting the defendant from refusing to extend and grant unto the plaintiff equal terms, facilities, accommodations, usages, privileges, and advantages in the receipt, transmission, carriage, continuance of carriage, and delivery of money and property, which defendant extended and granted to other express companies; but the court excluded from the operation of said decree of injunction property worth less than the transportation charges and also perishable property.

Upon the entering of this decree the defendant filed a motion to modify. This motion is as follows: "The defendant in the above-entitled cause moves that the court correct and modify the decree rendered in this cause * * * by adding to the last paragraph of the decree and at the end of said paragraph the following paragraphs and each of them, to wit: First. And this decree shall only be applied to such packages weighing seven pounds and less as plaintiff, in advance of tendering to the defendant, shall agree with the defendant that the same shall be carried on the basis of one through rate for the entire carriage, and there shall be one equal division of said rate between the plaintiff and the defendant, and if there be an

odd cent in said division it shall be taken by the carrier making delivery to the consignee.    Second.    This decree shall be effective as to future interchange of traffic between the plaintiff and defendant only when and so long as the plaintiff shall bind itself to the defendant to guarantee the payment to the defendant of any and all of advanced charges paid defendant to plaintiff which the defendant is not able to collect from the consignee thereof, provided the defendant shall give notice to the plaintiff, within sixty days after payment of such advanced charges, that the same cannot be collected from the consignee.    Third.    This decree shall be effective as to future interchange of traffic between the plaintiff and defendant only when and so long as the plaintiff shall bind itself to the defendant to interchange traffic reciprocally with the defendant upon accommodations which shall be the same to the defendant as the connecting carrier's tendering package for continuance of carriage to destination on plaintiff's line or route as are received and had by plaintiff as the connecting carrier's tendering packages for continuance of carriage to destination on defendant's line or route."

The defendant also filed its motion for a new trial, assigning the following reasons:    "(1) That the decision of the court is not supported by sufficient evidence; (2) that the decision of the court is contrary to law."    Each of these motions was overruled, to which rulings the defendant excepted.

The errors assigned in this appeal, and upon which appellant relies for reversal, are the following:    (1) The amended complaint does not state facts sufficient to constitute a cause of action; (2) overruling the demurrer to the first paragraph of the amended complaint; (3) overruling the demurrer to the second paragraph of said complaint; (4) sustaining demurrer to the second paragraph of answer; (5) sustaining demurrer to the third paragraph of answer; (6) sustaining demurrer to the fourth para-

graph of answer; (7) sustaining demurrer to the fifth paragraph of answer; (8) overruling motion to modify decree; (9) overruling motion for new trial.

The evidence given upon the trial is brought into the record by a bill of exceptions.

Plaintiff alleged in the first paragraph of its amended complaint that it is a corporation organized and doing business under the laws of the State of Indiana; that for three years last past it has been engaged in the business of carrying money, merchandise and other articles over the Southern Indiana Railroad Company's line in Indiana; and since May 16, 1901, up to the present date it received and agreed to receive compensation for such services; that since then continuously it has been engaged in consigning to defendant and other express companies such things so carried by it for transportation by such express company over railroads in the State of Indiana; that during all the time mentioned it has been and still is a responsible express company; that on May 16, 1901, it had and now has a paid-up cash capital of $50,000, and no liability existing against it. It is alleged that it is a joint stock association, and for twenty years last past has been engaged in the State of Indiana in carrying, over railroads, money, merchandise, and other articles for hire; that said defendant is and during all of said time has been granting to the Adams Express Company, the Southern Express Company, and other express companies, facilities, accommodations, and usages in the receipt, carriage, continuance of carriage, and delivery of such express matter, and terms, credits, advantages, and usages in the receipt, transmission and delivery of such express matter which the defendant has continuously refused, and still refuses, to the plaintiff; that said advantages consist in the defendant's maintaining business connections with such other express companies, whereby said defendant received from them, and they received from defendant, express packages and each paid the

298    SUPREME COURT OF INDIANA,

American Express Co. v. Southern Ind. Express Co.—167 Ind. 292.

carrying charges of the preceding carrier, and each completed the carriage and delivered such articles and collected from the consignee and retained all the charges of itself and of each preceding carrier.

The first paragraph further alleges that the plaintiff continuously and daily from May 16, 1901, tendered to the defendant express matter to be received and accepted by said defendant under equal terms and under the terms, credits, etc., in the receipt, transmission, and delivery of all express matter at all of said times granted by the defendant to said other express companies; that the defendant has refused to receive said packages, and by so refusing, unlawfully and unjustly discriminates against this plain-. tiff. The paragraph then sets out and assigns three specific instances of packages of express matter tendered and refused on May 30, 1901, to wit: (1) A package from Seymour, Indiana, consigned to Edward Corr, of Bloomington, Indiana, and carried by plaintiff to Bedford, and there tendered to the defendant, which the latter refused to receive and accept. (2) A package from Freetown, Indiana, consigned to Noble Moore, at Mitchell, Indiana, which was carried by plaintiff to Bedford, and tendered to defendant, and by it refused. It is averred that defendant's line passes through Bloomington and Mitchell, Indiana. (3) A package from Selma, Indiana, consigned to Dr. W. H. Livingston, Danville, Indiana, and carried by plaintiff to Bedford, and at that point tendered to defendant and by it refused. That defendant's line extends from Bedford to Danville, Indiana, and that all the aforesaid packages were received by the plaintiff in the usual course of business. It is alleged that along plaintiff's line there are, and for months past have been, thirty stations where it has maintained agencies; that the railroad over which the plaintiff maintains its line is over 160 miles in length, and that at each of its said agencies said plaintiff has since May 16, 1901, daily received express packages which were

MAY TERM, 1906. 299

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

consigned to persons in divers cities and towns in the State of Indiana, in which the defendant had and has agencies, and to which its line runs; that each day hereafter the plaintiff will receive packages along its line. It is further alleged that the defendant threatens to continue to refuse packages tendered to it by the plaintiff, will refuse to pay plaintiff's carrying charges, will refuse to complete the carriage of such packages, will refuse to receive from the consignee all the carrying charges, and will refuse to receive from plaintiff such packages and pay the carrying charges accrued thereon, unless enjoined from so doing; and that thereby the plaintiff will suffer irreparable injuries, the amount of which is impracticable to compute or ascertain, but which does not exceed the sum and value of $1,500. The paragraph closes with the prayer for a mandatory injunction on the final hearing.

The facts alleged in the second paragraph of the amended complaint are virtually the same as in the first, except that it contains fuller allegations as to the character of the plaintiff's incorporation. It avers that the plaintiff is a corporation organized in pursuance to the statutes of the State of Indiana, and that its purpose and business is to receive, and speedily to forward, deliver and transport over lines of railway and other public highways, by means of public and private conveyance, under the care of special messengers or otherwise, goods, etc., and to receive and forward for collection, bills, notes, etc., and, upon receiving payment, to return the money to the consignor, and also to receive and forward all articles of trade, etc., with the bill and charges of the shipper attached thereto to be collected, etc., and to return the amount of the charges to the shipper. Also to perform for the public all offices that by usage are incident to the forwarding business by the class of carriers known, recognized, and designated by the public as express carriers. It is further alleged in this paragraph that "defendant received from all express companies, except plain-

tiff, and from all persons, express matter for delivery on its lines and at its offices without the prepayment of the charges for transportation, but collected the same from the consignee.''

Defendant, in the second paragraph of its answer, substantially alleges that it is a copartnership, and that under the name of the American Express Company it is, and for twenty years has been, engaged in the business of an express carrier in Lawrence county, Indiana, and has carried, and still carries, money and other articles for hire on certain railroads in said State, and especially a railroad running through the city of Bedford and extending to Danville, Bloomington, and Mitchell, in said State of Indiana. It is alleged that the defendant's express business during the time aforesaid extended, and still extends, over railroads by connections over uninterrupted routes through the State of Indiana and into the states of Ohio, Pennsylvania, New Jersey, New York, Michigan, Illinois, and other states of the United States; that during all of said time it has received, and still receives and agrees to receive, compensation for its carrying services; that its routes and lines of express business, connected at various points in Indiana and other states with the lines and routes of other express carriers doing a like state and interstate express business, to wit, the United States Express Company, Wells-Fargo Express Company, Southern Express Company, and other express companies; that during all of the aforesaid time the defendant did, and still does, under agreements made between it and said other express companies, respectively receive from and deliver to each of them in the State of Indiana both intrastate and interstate express matter, and did and does advance to each of them their accrued charges thereon, and did and does receive from them its own accrued charges on express matter delivered by it to them.

This paragraph further alleges that the defendant on delivering to the consignee such matter transferred to it,

MAY TERM, 1906.     301

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

collected and collects from said consignee all accrued express charges of itself and all preceding carriers; that it did not and does not so receive express matter from other carriers, or deliver to them except in cases where there is an agreement with them; that such agreement embraced both intrastate and interstate business; that without such agreement respecting interstate business no agreement upon the subject of interchange business would have been made by the defendant; that such agreements secured the defendant a guaranty of repayment of such accrued charges in case the consignee refused to pay them, and in such case the agent of the transferring carrier did pay to the defendant's agent receiving the transfer the charges advanced by and those earned by defendant if a claim for same was made within sixty days; that the agreement contained a stipulation that on packages of seven pounds or less the through rate over the two or more lines should not be greater than either company would charge for its carriage for the same number of miles, had either company singly carried the same, and that this through rate should be equally divided between the carriers, the odd cent, if any, being taken by the company making the delivery to the consignee; and that within the last five years there has been no other custom, usage, or arrangement between defendant and any other express company respecting interchanging business.

The paragraph further avers that the plaintiff did not at any time before this suit was commenced, and especially on the day it tendered to defendant the packages mentioned in its complaint, have any agreement with the defendant respecting interchange business and up to the time of such tender the plaintiff and defendant had not interchanged express matter under any reciprocal agreement, and plaintiff had not offered, and did not offer at the time of said tender, to enter into any such agreement, and did not at the time of such tender offer to pay defendant's charges for carrying said packages, and did not offer to guarantee to

defendant the repayment of plaintiff's accrued charges or defendant's charges to be earned in the event that it could not be collected from the consignee, and it did not offer to put in force between the plaintiff and defendant a through rating and division of the through rate similar to the rating and division thereof in force between the defendant and such other express companies; that if the provisions of the express companies' statute of Indiana, approved March 7, 1901 (Acts 1901, p. 149, §§3312b-3312f Burns 1901), required the defendant under these circumstances to receive the packages tendered, and to advance plaintiff's accrued charges thereon and so to receive all similar packages so tendered by plaintiff, then it is alleged that said statute is void, because it is in violation of §8, article 1, and §1 of the fourteenth amendment to the Constitution of the United States, and also of §§21 and 23 of article 1 of the Constitution of Indiana, and that unless the provisions of said statute be so construed, plaintiff cannot have and maintain this suit. Wherefore judgment is demanded.

The third paragraph of the answer substantially alleges that the defendant is a joint stock association or copartnership, usually called an express company, not organized under the laws of Indiana, and that it is regularly engaged, and has been since March 29, 1879, continuously in the business of carrying money and property over and upon railroads in the State of Indiana; that it agrees to receive and does receive compensation therefor, and was so engaged in said State prior to the time when the statute in relation to foreign express companies (§§3306-3308 Burns 1901, Acts 1879 [s. s.], p. 146) was enacted; that upon the taking effect of the aforesaid act, and long before May 16, 1901, the defendant duly and fully complied with section two of said act of 1879, by executing and filing in the office of the recorder of Lawrence county, Indiana, the "agreement" mentioned in that section, authorizing process issued against the defendant to be served upon its express agents,

MAY TERM, 1906. 303

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

and further authorizing judgment to be rendered thereon in *personam* against the defendant copartnership in such actions, all in the manner as is provided in said section; that continuously since the filing of said agreement the defendant has, in pursuance of the rights and privileges secured to it by the act of 1879, *supra,* enjoyed such rights and privileges in the transaction of its express business in said State of Indiana and said county of Lawrence; that on May 15, 1901, at midnight of said day, the Secretary of State of the State of Indiana certified as then in force said statute, approved March 7, 1901; that the defendant's acceptance of the provisions of said act of March 29, 1879, became a contract between the defendant and the State of Indiana, which was, on May 15, 1901, and still is in full force, unless the act of March 7, 1901, *supra,* which attempted a repeal of the act of 1879, *supra,* and attempted to annex conditions to defendant's right to transact an express carrier business in Indiana different from those defined and authorized by said act of 1879, be a valid statute of Indiana; that the right to have and maintain this suit rests wholly upon, and does not exist without, the provisions of said act of 1901; and that said act is null and void because under the facts herein alleged it violates §10, article 1, of the Constitution of the United States, in that it impairs the obligation of said contract between the defendant and the State of Indiana. Wherefore judgment is demanded.

In the fourth paragraph of answer the defendant averred that it is a copartnership and association of persons, usually called an express company, and had been for five years in the business of carrying money and property over and upon railroads operated in Indiana and in said Lawrence county; that in receiving and agreeing to receive compensation for such carriage the Southern Indiana Express Company did tender to the defendant the express packages mentioned in the complaint for continuance of carriage from said city of Seymour to destination, but that such

304    SUPREME COURT OF INDIANA,

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

tendering company did not pay or offer to pay defendant's charges for such carriage, and did demand from defendant said tendering company's accrued charges for the carrying of said packages to Bedford, and did not offer to guarantee defendant against loss of either of said charges, in case the consignee would not pay them, and thereupon the defendant declined to receive and carry said packages and to advance said accrued charges; that said Southern Indiana Express Company was then a corporation organized and existing under the laws of the State of Indiana, but was not a responsible express company, nor an express company of any kind, because there never had been a statute of Indiana authorizing the incorporation of express companies; that said company, by its certificate of incorporation and articles of association, declared itself to be organized as a forwarding express company in pursuance of the statutes of Indiana relating to voluntary associations and corporations, which articles were filed June 22, 1898, in the office of the Secretary of State of the State of Indiana, and there was then but one statute authorizing the incorporation of forwarding companies, viz., clause fifteen of section one of the voluntary association act of 1893 (Acts 1893, p. 289), which reads: "To organize forwarding and commission companies, and to own and operate wharf-boats in connection therewith, upon any of the rivers within or bordering upon the State of Indiana;" that said company was incorporated in pursuance of said subsection, and not otherwise; that it, in assuming to exercise the franchise of an express company common carrier, and to transact an express carrier business, as especially touching the express packages mentioned in the complaint, acted wholly *ultra vires* its charter, and could not and did not legally bind its assets and property, although in that behalf it attempted to act and claimed to be acting as a corporation, and not as a copartnership or otherwise. The paragraph closes with a prayer for judgment.

The fifth paragraph of the answer alleges that the defendant is a joint stock company organized under the laws of the state of New York more than five years before the commencement of this suit, and was not incorporated anywhere and was not organized in the State of Indiana; that during all of that time it was a common carrier of goods for hire over various railroads of many of the states of the United States and over a railroad in the city of Bedford, Lawrence county, Indiana; that, prior to the commencement of this suit, the plaintiff was doing an express carrier business over the Southern Indiana Railroad through the city of Bedford to the city of Terre Haute, in the State of Indiana; that after May 15, 1901, plaintiff made a general demand that defendant should receive at junction points from plaintiff express packages carried thereto by it, and destined to points on defendant's line, and that immediately upon defendant's receipt thereof the defendant should pay plaintiff's accrued charges thereon, and that defendant should accept such packages without prepayment of defendant's charges or without a guaranty of such payment, if the consignee should not pay them, and without agreeing that on a package weighing seven pounds or less the freight charges should be the same as though it were to be carried only over a single express route, and that this through rate should be equally divided between plaintiff and defendant, the odd cent, if any, being taken by the company completing the carriage.

Said paragraph further alleges that up to the time of plaintiff's said general demand, and of the tender of the particular packages mentioned in the complaint, the defendant had not by custom, usage, contract, arrangement, agreement, or otherwise, or in fact ever, accepted of another common carrier a package like those in question for continuance of carriage or delivery, where such tendering carrier had not (1) made with defendant a through rate from point of origin to point of destination on all packages,

306    SUPREME COURT OF INDIANA,

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

which rate was not greater than the single rate of either carrier had the whole carriage been over but one line; (2) made an agreement for an equal division of such through rate; (3) agreed to refund to defendant any accrued charges that defendant might advance to it if not collectible from consignee; (4) agreed to pay defendant its charges on the package if not collectible from the consignee; (5) agreed that if defendant should tender such other carrier like express matter for completion of carriage, to make one through rate thereon, divide such rate equally, advance defendant's accrued charges, and secure the payment to it of all uncollectible charges by defendant's guaranty of collection.

It is further alleged that the plaintiff making said tenders to defendant did not offer to do any of said five things hereinbefore mentioned, and did not intend to do any of them, but demanded that defendant carry the tendered packages on credit as respects defendant's charges thereon and advance to the plaintiff the latter's charges which were its full legal rate, being twenty-five cents on each of said tendered packages, instead of twelve cents, the amount receivable on a through rate by any of said other express companies and without any obligation on plaintiff's part to refund either of said charges to defendant if not collectible from the consignee; that when making said tender plaintiff did not have a purpose to make such through rating, division thereof, or reimbursement, but intended to take the facilities it demanded, and which defendant refused, without itself making a reduced or through rate, and without paying or agreeing to pay either of said charges if the consignee should refuse to pay them, and therefore the defendant charges that while the privileges, accommodations, and facilities were such as this defendant granted other express companies, yet the conditions upon which the demand was made by plaintiff were different from and more favorable to the plaintiff than those that then existed or had hereto-

fore existed in any case where the defendant had taken such express matter from any other carrier for completion of carriage, and that such difference of conditions was to the advantage of the plaintiff and to the disadvantage and injury of the defendant; that if the act of the General Assembly of March 7, 1901 (Acts 1901, p. 149, §3312b *et seq.* Burns 1901), shall be construed as requiring defendant to submit to such unequal conditions and to acquiesce in such advantage to plaintiff, then said act is in contravention of section one of the fourteenth amendment to the Constitution of the United States, and is therefore void; that if said act shall be so construed, then plaintiff is not entitled to the relief for which it prays. This paragraph closes with a demand for judgment.

The statute upon which this action is based, by its title, professes to relate to express companies, "defining their duties, prohibiting discrimination and combinations, declaring certain acts to be unlawful," etc. So much of the first section of the act of 1901, *supra,* as is material to the question involved in the case at bar is as follows: "That all copartnerships, associations of persons, individuals, joint stock associations, corporations, or companies, usually called express companies, now engaged, or that may hereafter engage in the business of carrying or transporting money, merchandise or other articles, over, or upon any of the railroads operating in this State, and receiving or agreeing to receive compensation for such services, shall grant to each and all consignors, including other responsible express companies as consignors, equal terms, facilities, accommodations and usages, in the receipt, carriage, continuance of carriage, and delivery of money and property usually carried by express companies, and they are prohibited from granting to any one carrier, class or combination of carriers, any terms, credit, privileges, advantages, usages, accommodations or facilities in the receipt, transmission or delivery of express matter that they do not grant

to all others, and the granting of any credit, privileges, terms, usages, facilities or advantages to any one person, carrier, company or combination or class or companies, carriers or persons, that are not granted to all other responsible carriers or persons shall be, and is hereby declared unjust and unlawful discrimination."

Section four of said act provides that "any such carrier, corporation, copartnership, or association failing to comply with any of the provisions of this act or violating any of the provisions thereof, shall, upon being convicted of any such failure or violation in an action to be brought in the name of the State of Indiana by the prosecuting attorney of the county in which the offense occurs, forfeit and pay to the State $500 for each offense, and the commencement of such action, service of process and proceedings therein shall conform to the rules governing proceedings in civil actions. And such offending carriers, corporations, associations or copartnerships shall also be liable in any court of competent jurisdiction in a civil action to be brought by and in the name of any person injured by any violation of this act, and such person may recover threefold the amount of his actual damages shown, and shall also have a remedy by injunction in any circuit or superior court of this State to command any of the acts or things required to be done and to prohibit any of the acts forbidden by this act, and the word 'person' herein, shall be construed to include any corporation, copartnership, or association of persons."

The constitutional validity of the statute upon which this action is based is assailed by appellant's learned counsel for various reasons. It is asserted that sections one and four are both violative of §1 of the fourteenth amendment to the federal Constitution for the reasons that they attempt (1) to deprive appellant of its right to demand prepayment of its carrier charges, which right, as it insists, it has under the common law, and which is a property right; (2) to require an express car-

MAY TERM, 1906. 309

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

rier which desires to advance accrued charges to one connecting carrier to make such an advancement to all responsible carriers, and by so doing the statute attempts to compel the making of a "forced loan," which amounts to the taking of the property of one person and giving it to another; (3) to take from express companies their common-law right to contract with reference to interchange traffic, and such right, it is asserted, is one of property.

This same statute was involved, and in the main the same constitutional objections thereto were advanced and urged against it, in the case of *Adams Express Co.* v. *State* (1903), 161 Ind. 328. In fact, the questions raised in that appeal to all intents and purposes are the same as those presented and argued in the case at bar. They were fully considered by the court and held to be untenable, and the constitutional validity of the statute was sustained, and we are satisfied to accept the decision in that appeal, so far as applicable, as a ruling precedent upon the points or questions raised and discussed in this case. It is evident that each paragraph of appellee's complaint is founded upon sections one and four of the act in controversy. The pleader does not attempt under either of these paragraphs to invoke any remedial right or rights other than those awarded by the provisions of the statute. Therefore, the points advanced by appellant's counsel that neither paragraph discloses any ground for equity jurisdiction, for the reason that it appears that appellee has an adequate remedy at law in the recovery of damages for the wrongs of which it complains, and for the further reason that under the facts alleged it has not brought itself within the well-recognized maxim, which avers that "he who seeks equity must do equity," do not apply.

It will be seen that under section four, *supra,* in addition to the actions thereby provided, one in the name of the State for a penalty and the other by the party injured

310     SUPREME COURT OF INDIANA,

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

to recover threefold the amount of the actual damages sustained, the legislature deemed it proper to provide expressly that such person "shall also have a remedy by injunction in any circuit or superior court of this State to command any of the acts or things required to be done and to prohibit any of the acts forbidden by this act." The acts required to be done, as declared by section one, *supra,* are that such express companies "shall grant to each and all consignors, including other responsible express companies as consignors, equal terms, facilities, accommodations and usages, in the receipt, carriage, continuance of carriage, and delivery of money and property usually carried by express companies." The acts which such companies are forbidden to do are "granting to any one carrier, class or combination of carriers, any terms, credit, privileges, advantages, usages, accommodations or facilities in the receipt, transmission or delivery of express matter that they do not grant to all others." The legislature clearly has the right by statute to enlarge the equity powers of a court, and thereby authorize it to grant equitable relief in matters or cases in which, in the absence of such statute, the court would have no equity jurisdiction. *Eilenbecker* v. *District Court* (1890), 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; *Arment* v. *Hensel* (1892), 5 Wash. 152, 31 Pac. 464; *Carleton* v. *Rugg* (1889), 149 Mass. 550, 22 N. E. 55, 5 L. R. A. 193, 14 Am. St. 446.

By its averments each paragraph of the complaint shows that the appellant has violated or declined to obey the provisions of section one by refusing to grant to appellee "facilities, accommodations, and usages in the receipt, carriage, continuance of carriage and delivery of express matter," etc. The pleading specifies what constituted the accommodations and facilities, etc., granted by appellant to other express companies, but which it denied to appellee. In fact three specific cases are given of express packages

MAY TERM, 1906. 311

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

tendered by appellee to appellant which the latter refused to receive and carry. Among other things, it is shown that appellee is a responsible express company and is seeking by this action to compel appellant, by a mandate of the court, to grant to it the same terms, facilities, etc., which appellant gives or grants to other responsible express companies. It is undoubtedly true that at common law no such duty or duties would rest upon appellant as appellee in this action seeks to compel it to perform. By the common law the duty of a common carrier is to carry for all persons, for a reasonable remuneration to be paid by each, but such carrier is under no obligation to treat all of its customers or patrons alike, hence in the absence of the statute in question appellee would have no standing to ask that appellant discharge the duties which it demands. The insufficiency of the common law to afford a remedy was no doubt recognized by the legislature, and induced the enactment of the act in controversy. Formerly the elasticity of the common law and its adaptability to apply to and govern new conditions and things was regarded as one of its crowning virtues, but in the great commercial age in which we live the common law has not, in all respects, been equal to the many new conditions or emergencies which have arisen, or been able to keep pace with the great march of events, hence the legislature has been from time to time required to enact statutes to meet, regulate, or control the great interests which affect the rights and common welfare of the people. Such is the character of the act now under consideration. It is not tenable to argue that this act operates to deprive appellant of a right to demand carrier charges, for it only operates to take away the right of appellant to demand the prepayment of such charges from appellee while it waives the prepayment thereof from all other express companies, and all persons who ship or express freight or goods over its lines. Re-

312 SUPREME COURT OF INDIANA,

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

gardless of the statute, appellant still has the right to require prepayment of such charges provided it treats appellee and all persons equally in this respect. Or, in other words, by the provisions of the statute in question, it must, under like or similar conditions or circumstances, treat "Trojans and Tyrians without discrimination." In the appeal of *Adams Express Co.* v. *State, supra,* this court said: "The purpose of the statute was to prevent express companies and other common carriers doing business in this State from unfairly and unjustly discriminating against other persons or corporations engaged in the same business, by extending to some carriers advantages and facilities which were denied to others. Of late years many important enactments of this character, state and federal, have been found necessary for the protection of the interests of the people. All rules, practices, customs, and usages designed to destroy competition in business, or necessarily having that effect, are inimical to the public well-being, and were condemned by the common law. The act under examination belongs to that class of legislation which has been found necessary to prevent the destruction of competition, and the exclusive possession by a few of the great fields of industry and enterprise. It has never been denied that in the exercise of the police power property rights may be sacrificed, natural privileges curtailed, and liberty restricted or taken away. As the public peace, safety, and well-being are the very end and object of free government, legislation which is necessary for the protection and furtherance of this object cannot be defeated on the ground that it interferes with the common-law rights of some of the citizens, or even deprives them of such rights." Citing numerous authorities.

It is evident that if appellant advanced the accrued charges to one connecting carrier, then it must advance

such charges to other responsible express companies.

6. It was the vice of discrimination in the receiving and transportation of express matter which the statute intended to prevent. It in effect commands that the express carrier shall receive and carry upon the same terms merchandise and other goods delivered to it for carriage by other responsible express companies or other consignors. The law applies equally to both appellant and appellee, and each can demand of the other the advantages of all facilities, customs, usages, terms and credits which such other company grants or allows to its most favored patron or customer. *Adams Express Co.* v. *State, supra.*

In the latter case we held, and properly so, that the act in question did not attempt to regulate interstate commerce.

9. The same point is again advanced by appellant in this appeal. But it cannot be said that everything which may affect commerce is regulation thereof within the meaning of the federal Constitution. *Chicago, etc., R. Co.* v. *Iowa* (1876), 94 U. S. 155, 24 L. Ed. 94; *Express Cases* (1886), 117 U. S. 1, 6 Sup. Ct. 542, 29 L. Ed. 791; *Missouri, etc., R. Co.* v. *Haber* (1898), 169 U. S. 613, 18 Sup. Ct. 488, 42 L. Ed. 878. Even if it can be asserted that this statute incidentally operates to affect interstate commerce, still that would not render it invalid, for, in the absence of legislation on the part of congress, the decisions of the Supreme Court of the United States affirm that a state may, under its police power, pass reasonable laws, local in their operation, although they may incidentally affect interstate commerce. See *United States Express Co.* v. *State* (1905), 164 Ind. 196, and cases cited on page 204 of the opinion.

In the case last cited, the validity of an act of the legislature of this State, requiring express companies to deliver express matter to all persons to whom the same was

1. consigned who resided within the limits of cities having a population of twenty-five thousand or

314    SUPREME COURT OF INDIANA,

American Express Co. v. Southern Ind. Express Co.—167 Ind. 292.

more, was involved. It was urged in that appeal, as in the case at bar, that the act in question operated to deprive express companies of liberty and of property without due process of law, and therefore it was antagonistic to the fourteenth amendment of the Constitution of the United States. This contention the court denied. In passing upon the question as presented in that appeal we said: "Under the police power persons may be deprived of both liberty and property, at least in a sense, and that without redress, provided that it be by due process of law. Of course, the mere act of the legislative power does not necessarily amount to due process of law, or, what is its equivalent, the law of the land. *McKinster* v. *Sager* [1904], 163 Ind. 671, 68 L. R. A. 273, 106 Am. St. 268, and cases there cited. However, every presumption must be indulged by the courts which the circumstances reasonably admit of, that the legislative authority was warranted in enacting the statute. 'While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts.' *Frisbie* v. *United States* [1895], 157 U. S. 160, 165, 15 Sup. Ct. 586, 39 L. Ed. 657."

The second, third, and fourth paragraphs of appellant's answer to appellee's complaint are substantially the same as were those considered and held to be insufficient in stating a cause of defense in *Adams Express Co.* v. *State, supra.* It may be said, however, that these several paragraphs, and likewise the fifth paragraph of answer, constitute nothing more than an argumentative denial, and the facts therein alleged, so far as competent, were admissible under the general denial which constituted the first paragraph of the answer. *Jeffersonville Water Supply Co.* v. *Riter* (1897), 146 Ind. 521; *Indiana, etc.,*

*Oil Co.* v. *O'Brien* (1903), 160 Ind. 266.. The ruling of the court, therefore, in sustaining the demurrer thereto, even if erroneous, under the circumstances was harmless.

Counsel for appellant argue that the fifth paragraph of answer presents the defense that appellee could not secure injunctive relief at common law. This we have conceded, but, as previously stated, the suit is based upon the statute in question, and not upon the common law.

There was no error in denying the motion to modify the decree. The latter is in harmony with the finding of the court, and it fully conforms to the provisions of the statute upon which this action is founded. By its terms appellant is only in effect commanded to treat appellee as it treats other express companies, under like conditions and circumstances. The finding of the court is sustained by the evidence upon every material point.

In conclusion, we adjudge that the statute here involved does not violate any of the provisions of the state or federal Constitutions, as pointed out and relied upon by appellant. There are some other questions presented which we need not expressly refer to, as they were presented and considered and properly decided adversely to the contention of appellant's counsel in *Adams Express Co.* v. *State, supra.* We find no reversible error, and the judgment is, therefore, affirmed.

Montgomery, J., did not participate in this decision.