502 APPELLATE COURT OF INDIANA,

Evansville, etc., Ry. Co. *v.* Evansville, etc., Ry.—50 Ind. App. 502.

## EVANSVILLE SUBURBAN AND NEWBURGH RAILWAY COMPANY *v.* EVANSVILLE AND EASTERN ELECTRIC RAILWAY ET AL.

[No. 7,682. Filed May 28, 1912.]

1. RAILROADS.—*Interurban.*—*Powers.*—The powers and authority of interurban railroad companies are circumscribed by the street railway law of 1861 (Acts 1861 [s. s.] p. 75, §4143 R. S. 1881), as amended and supplemented by later enactments (§4294 Burns 1908, Acts 1903 p. 180; §5630 *et seq.* Burns 1908, Acts 1901 p. 119). p. 508.

2. RAILROADS.—*Interurban.*—*Nature of Business.*—*Rights and Liabilities.*—Since the business of interurban railroad companies is public in its nature and directly involves public interests, they are invested with powers not given to individuals nor strictly private corporations and their rights and liabilities must be construed and measured by the law applicable to *quasi* public corporations. p. 508.

3. RAILROADS.—*Interurban.*—*Contracts.*—*Specific Performance.*—In a proceeding for the specific performance of a contract between two interurban railroad companies providing for the transportation of freight and passenger business of the one over the tracks of the other, the court will look to the probable consequences of its enforcement, and the interests, if any, to be affected thereby, before considering individual advantages. p. 509.

4. RAILROADS. — *Interurban.* — *Contracts.* — *Traffic Agreement.* — *Abandonment of Franchise Rights.*—*Validity.*—A contract between two interurban railroad companies whereby the one shall control and transport over its line between certain points all the freight and passenger business of the other for a period of thirty-five years, amounts to a prohibition against the latter company operating its road in territory occupied by the other, and is therefore invalid as tending to stifle competition and to create a monopoly. pp. 509, 510, 514.

5. RAILROADS.—*Interurbans.*—*Duties.*—*Abandonment.*—By the acceptance of its franchise, an interurban railroad company is charged with the performance of certain well defined public duties which it cannot at will cast aside and repudiate, so as to defeat the purposes of its organization. p. 510.

6. RAILROADS.—*Powers.*—*Contracts.*—Railroad corporations are incapable of entering into contracts beyond the scope of their powers, expressed or necessarily implied in furtherance of those expressly granted, or of absolving themselves from their obliga-

tions to the public, or from performing their corporate duties, without legislative consent. p. 513.

7. CONTRACTS.—*Enforcement.*—*Remedy.*—The legal effect of a contract is of controlling influence in determining the remedy the parties may have for its enforcement. p. 513.

8. INJUNCTION.—*Mandatory Injunctions.*—*When Will Be Granted.* —Mandatory injunctions will be granted only to prevent serious damage, and to obtain such relief the complainant must make out a clear case. p. 514.

9. RAILROADS.—*Interurban.*—*Powers.*—*Traffic Agreements.*—Traction companies may make valid traffic or operating agreements for the use by one of another's tracks, terminals, equipment, etc., where no monopoly is thereby created and neither company incapacitates itself from performing its duties to the public, or foregoes its charter rights to construct and operate a competing road. p. 514.

10. RAILROADS. — *Interurban.* — *Traffic Agreements.* — *Validity.* — *Statute.*—A contract between two interurban railroad companies, whereby the one shall control and transport over its line between certain points all the freight and passenger business of the other for a number of years, is not authorized by §5652 Burns 1908, Acts 1903 p. 330, providing that a street railroad company may sell, lease or otherwise transfer its property, franchises, etc. p. 514.

From Vanderburgh Circuit Court; *Curran A. DeBruler,* Judge.

Action by the Evansville Suburban & Newburgh Railway Company against the Evansville & Eastern Electric Railway and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*George A. Cunningham, Iglehart & Taylor,* for appellant.
*Albert W. Funkhouser, Arthur F. Funkhouser, Woodfin D. Robinson* and *William E. Stilwell,* for appellees.

MYERS, J.—Appellant, hereafter called the Newburgh Company, commenced this suit against appellees, the Evansville and Eastern Electric Railway, hereafter referred to as the Rockport Company, and certain named persons as its directors; also the Evansville Terminal Railway, and the Evansville Railways Company, for a mandatory injunction requiring the Rockport Company, its officers, agents and

504   APPELLATE COURT OF INDIANA,

Evansville, etc., Ry. Co. *v.* Evansville, etc., Ry.—50 Ind. App. 502.

employes, specifically to perform the provisions of a certain alleged contract, and to deliver its cars, both freight and passenger, at Newburgh, to appellant for transportation over its line, according to the terms of that contract, and that the Rockport Company, its officers, agents and employes, be enjoined from further refusing to perform said contract, and from having any dealings with the Evansville Terminal Railway in violation thereof.

The complaint was in two paragraphs. Separate and several demurrers to each of these paragraphs, for want of facts, by appellees, other than the persons named as directors, who joined in a demurrer, were sustained, and appellant refusing to plead further, judgment was rendered against it. The rulings of the court in sustaining the several demurrers are assigned as errors. The cause was appealed to the Supreme Court, and on the order of that court it was transferred to this court.

The questions controlling the decision of this case rest on a proposition and its acceptance, both made a part of each paragraph of the complaint, and relied on by appellant as forming the contract made the basis of its cause of action. That part of the proposition and acceptance at all material here is as follows:

"(1)   The arrangement hereby proposed if entered into shall continue for the period of thirty-five years from the date the same becomes effective by the execution of a contract between us.

(2)   In consideration of the rights hereby granted to you by it, it is understood that all of the business of your company so far as transportation between Evansville and Newburgh is concerned shall be done under this contract, and all of your cars, both freight and passenger, shall make use of the track of our company between Evansville and Newburgh under the terms of this agreement.

(3)   The Evansville Suburban and Newburgh Railway Company will upon the completion of your line from the end of its electrified tracks in Newburgh at the corner of State and Water streets to Rockport, Indiana,

transport your cars, passenger, freight and express to and from Evansville over its line and allow you the use of its terminals, both freight and passenger, in Evansville for said term of thirty-five years.

The terms on which such service shall be conducted and the rental to be paid by your company to this company for the use of its terminals to be the subject of mutual agreement between the two companies, or in case an agreement can not be reached, then this question is to be submitted to arbitration as hereafter provided. It is expressly understood that nothing in this agreement contemplates the doing by your company of any business between Newburgh and Evansville proper, and intermediate stations and all the revenues derived therefrom shall belong to this company.

In case of such disagreement each of the parties shall select an impartial arbitrator, and the two arbitrators so chosen shall select a third arbitrator and the award of the three arbitrators so chosen shall be binding upon the parties.

\* \* \*

(4) You are to furnish first-class, modern, properly equipped cars acceptable to our company. We will furnish conductors and motormen for your cars while in use on our line and they shall collect all fares between Newburgh and Evansville. All of your cars while on our road shall be subject to the control and direction of our company.

\* \* \*

(6) The right is reserved by this company to operate its freight trains and haul all freight on your tracks between State street in Newburgh, Indiana, and 'Archbold Coal Mines', so as not to interfere with the operations of your passenger cars over the same.

It is understood that the usual per diem charged for freight cars shall be made by the party entitled thereto in addition to its pro rata share of said freight and express tariff.

\* \* \*

(10) On default by you in the payment of the amounts due monthly to this company, or on default by you in the performance of any of the other conditions herein required of you, this company shall have the right to give you notice in writing, specifying wherein you are in default and requiring you within ten (10) days

to correct the same. On your failure so to do within said time this company shall have the right upon giving an additional notice of ten (10) days in writing to terminate this contract, or it may at its option terminate the same by suitable legal proceedings.

(11) All of your cars shall be of the standard gauge of the track of this company and shall be of approved construction and weight to operate over said track without damaging the same in any manner, and all of your cars shall be operated under such schedules as may hereafter be agreed upon by the two companies and not interfere with the cars of this company.

\* \* \*

(14) The expense incurred in the sale of tickets and in providing and maintaining suitable passenger terminals and freight terminals in Newburgh shall be borne by each company *pro rata* according to the business done.

(15) It is expressly understood that the rights granted to you over our road between Evansville and Newburgh are not exclusive, and we reserve the right to operate our own cars, both freight and passenger, between said points as heretofore done by us and upon such reasonable schedules as shall accommodate the convenience of both of us.

\* \* \*

(19) It is understood that such details of the arrangement hereby proposed as are not herein covered shall be determined by the mutual agreement of the parties as occasion requires, and in case of disagreement by arbitration in the manner above provided.''

At the time of the acceptance, the parties agreed to the following interpretation of the proposition:

''It is the understanding that your company shall take charge of our cars at Newburgh and that your own conductor and motorman shall bring them into Evansville. That the amount which shall come to us and to you out of the fares for passengers to and from points east of Newburgh shall be adjusted between the two roads, and that all freight or express matter brought over the road to and from points east of Newburgh shall also be adjusted. That these matters, together with the amount that shall be paid your road for use of its tracks and terminals and the amounts which shall be

allowed to our road for the use of the cars, are all matters to be settled by arbitration. It is also our understanding that the arbitration which is made shall not be conclusive for the whole time of the contract, but that successive arbitrations may be had at the request of either person at periods of say five years. It is also our understanding that the clause providing for the termination of the contract upon ten days' notice, to wit: Section 10 of the contract, shall not apply to cases where there is a bona fide difference as to whether there is or is not a breach of the contract. Such breaches shall be submitted to arbitration also. It is also our understanding that nothing in the contract shall prevent the taking on or letting off of passengers by our cars between Newburgh and Evansville, and any clauses in the contract appearing to be contrary to this are only intended to refer to the fares which are to be taken and who shall be entitled to them.''

The aforesaid proposition was dated April 25, 1906, and at that time appellant was operating a line of electric railway from Evansville to Newburgh. Prior to that time the Rockport Company had been incorporated to construct an electric line of railway from Evansville to Rockport, paralleling appellant's line to Newburgh, but being unable to finance the proposed enterprise, it sought and obtained from appellant the proposition, which, with the agreed interpretation, was accepted by the Rockport Company May 8, 1906. The Rockport Company thereafter constructed its road from Newburgh to Rockport, connecting with appellant's road at Newburgh, and together forming a through line between Evansville and Rockport, which was opened for business in June, 1907. Under the contract between the two companies, all of the Rockport Company cars, both passenger and freight, were turned over to appellant at Newburgh and in charge of its agents, servants and employes they were run over appellant's track to Evansville, and from Evansville back to Newburgh, where they were released to the Rockport Company. It further appears that the Rockport Company, aided, encouraged and with the coöperation of its

coappellees, violated and repudiated its contract with appellant, by changing and transferring in part, and threatening to change and transfer all of its business and the running of its cars between Newburgh and Evansville from appellant, and its line of road and tracks to a parallel line of road since constructed between said two last-named points by the Evansville Terminal Railway, a corporation caused to be formed by the officers of the Rockport Company.

In the consideration of this case we will treat appellant's proposition and the interpretation placed thereon by the parties as one instrument, and hereafter, for the purpose of brevity, refer to them as the contract. This contract, appellee Rockport Company insists is invalid for the following reasons: (1) The Rockport Company had no power to make the contract. (2) The contract is void as being against public policy. (3) The contract is not of such nature that it can be specifically enforced. On the other hand, appellant contends that the facts disclosed show that the contract is expressly authorized by statute (§5652 Burns 1908, Acts 1903 p. 330), but if not so authorized, the two corporations clearly had the power to make it, for the reason that it was no more nor less than a trackage or operating agreement, and authorized by law as an incident to the business in which they were engaged.

The first question presented challenges the validity of the contract.

Both parties to the contract were Indiana corporations. Their powers and authority are circumscribed by the street railway law in force September 7, 1861 (Acts 1861 [s. s.]p. 75, §4143 R. S. 1881), as amended and supplemented by later legislative enactments. §4294 Burns 1908, Acts 1903 p. 180; §5630 et seq. Burns 1908, Acts 1901 p. 119. Their business is public in its nature, and directly involves public interests. For that reason they are invested with powers not given to individuals nor strictly private corporations. *Board,*

MAY TERM, 1912. 509

Evansville, etc., Ry. Co. *v.* Evansville, etc., Ry.—50 Ind. App. 502.

etc., v. *Lafayette, etc., R. Co.* (1875), 50 Ind. 85, 108. Being granted these exceptional powers by the State, their rights and liabilities are to be construed and measured by the law applicable to that class of corporations known as *quasi* public. 1 Thompson, Corporations (2d ed.) §§32, 33.

In this case the extraordinary jurisdiction of the court is sought by one of the parties to compel the other to perform its part of a certain contract. In view of the 3. nature of that contract, the business affected, and the relief sought, it is important that we look to the probable consequences of its enforcement, and the interests, if any, to be affected thereby, before considering individual advantages. For it must be kept in mind that "railroad corporations are regarded as public agencies, owing duties to the public generally. Accordingly, they can make no contract which shall prohibit them from serving the public as the future demands of business or concentration of population may require." *Louisville, etc., R. Co.* v. *Sumner* (1886), 106 Ind. 55, 59, 5 N. E. 404, 55 Am. Rep. 719.

It is apparent from the contract in question that the Rockport Company had agreed to abandon, for a period of thirty-five years, its purpose and its franchise rights 4. obtained from the State to construct and operate a road between Evansville and Newburgh. This is so, for the reason that it has expressly agreed (1) that the transportation of all of its business between Evansville and Newburgh shall be done by appellant, and all its cars, both freight and passenger, between these two points, shall use appellant's track; (2) that appellant shall take absolute charge and control of the Rockport Company's cars at Newburgh, and retain possession of them until they are returned to Newburgh; that none of such cars shall stop to take on or put off passengers in the present corporate limits of Newburgh, east of State street; (3) it shall do no business between Newburgh and Evansville proper, and intermediate stations; (4) all revenues derived from business done be-

tween Newburgh and Evansville shall belong to appellant; (5) it agrees to furnish cars acceptable to appellant, and of approved construction and weight to operate over appellant's track without damaging the same in any manner.

The observance of these stipulations by the Rockport Company eliminated it as a competing line between Evansville and Newburgh as completely as though it never existed. The control and management of its cars was limited to its track east of Newburgh, and its business with the public confined to such as originated or was consigned to points on its completed line. This condition, under the terms of the contract, was to continue for a period of thirty-five years, for it agreed that all of its business between Evansville and Newburgh should be done by appellant, and under the latter's direction and control. The Rockport Company held a franchise to construct and operate an electric line of railway between Evansville and Rockport, by way of Newburgh. The acceptance of this franchise carried with it certain privileges and powers conferred only on the theory that the purpose to be accomplished was the promotion of public interests by a legal entity, regarded as a public agent. Hence the Rockport Company, as a common carrier, was charged with the performance of certain well-defined public duties, which it could not at will cast aside and repudiate, so as to defeat the purpose of its organization, without offending the law of its creation. *State, ex rel., v. Portland, etc., Oil Co.* (1899), 153 Ind. 483, 53 N. E. 1089, 53 L. R. A. 413, 74 Am. St. 314. It does not follow from the mere fact that cars of the Rockport Company were run to Evansville, that it was operating a road to that point, or that it had not abandoned any of its duties as a public service corporation. As further tending to illuminate the force of the contract in question, it appears that the Rockport Company for a time ran its cars over appellant's track, forming a continuous line from Rockport to Evansville, yet its right to continue so to do depended on

whether said cars were acceptable to appellant, and of approved construction and weight. This provision of the contract, in the absence of any stipulation on the part of appellant to improve its road and track to meet the necessary demands of the new company, enabled it to control the size and construction of the Rockport Company's cars, if they would go to Evansville, for a period of thirty-five years, regardless of the rights, convenience or future reasonable demands of the public.

In the case of *Thomas* v. *West Jersey R. Co.* (1879), 101 U. S. 71, 83, 25 L. Ed. 950, the court, in speaking of a principle under which contracts such as we have here are invalid, not because they are strictly within the doctrine *ultra vires*, said: "That principle is that where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy."

In the case of *Union Pac. R. Co.* v. *Chicago, etc., R. Co.* (1896), 163 U. S. 564, 581, 16 Sup. Ct. 1173, 1180, 41 L. Ed. 265, as applicable to the question under consideration, the general rule is stated as follows: "Railroad corporations possess the powers which are expressly conferred by their charters, together with such powers as are fairly incidental thereto; and they cannot, except with the consent of the State, disable themselves from the discharge of the functions, duties and obligations which they have assumed."

In the case of *Muncie Nat. Gas Co.* v. *City of Muncie* (1903), 160 Ind. 97, 103, 66 N. E. 436, 60 L. R. A. 822, the court, in speaking of *ultra vires* contracts, said: "Without

512    APPELLATE COURT OF INDIANA,

Evansville, etc., Ry. Co. *v.* Evansville, etc., Ry.—50 Ind. App. 502.

attempting to cover the whole ground, it may be said that if a contract is of such character that had the corporation at once proceeded to execute it, its act would have been contrary to public policy, or expressly or impliedly prohibited by statute, or would, in any degree, disable the corporation from the performance of its statutory duties, the undertaking cannot be enforced by either party. To this extent the cases, English, federal, and state, are in reasonable harmony.''

In the case of *American Express Co.* v. *Southern Ind. Express Co.* (1906), 167 Ind. 292, 78 N. E. 1021, it was said: ''All rules, practices, customs, and usages designed to destroy competition in business, or necessarily having that effect, are inimical to the public well-being, and were condemned by the common law.''

In *State, ex rel.,* v. *Portland, etc., Oil Co., supra,* the following language was used: ''It is an old and familiar maxim that 'Competition is the life of trade,' and whatever act destroys competition, or even relaxes it, upon the part of those who sustain relations to the public, is regarded by the law as injurious to public interests and is therefore deemed to be unlawful, on the grounds of public policy.''

The last two quotations were given with approval in the case of *Tousey* v. *City of Indianapolis* (1911), 175 Ind. 295, 94 N. E. 225, in which case it was held that the common-law rule is in noway modified in Indiana.

In the case of *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234, 70 N. E. 843, this court, in considering a contract whereby one railroad company agreed not to so construct its road or switches as to divert the benefits derived by another company from certain stone-quarries, said: ''By this agreement the two railroad companies undertook to contract away the rights of third parties, without their knowledge, and in defiance of the public duty devolved upon such companies.'' It was held that the contract had

the effect of depriving the shipper of the benefits of competition, and tended to create a monopoly in one of the contracting parties, against public policy and contrary to the law which seeks to prevent the creation of monopolies, and to foster fair competition.

The decided cases, with marked unanimity, hold that railroad corporations are incapable of entering into contracts beyond the scope of their powers, expressed or necessarily implied in furtherance of those expressly granted, or of absolving themselves from their obligations to the public, or from performing their corporate duties without legislative consent. *Board, etc.,* v. *Lafayette, etc., R. Co., supra; Thomas* v. *West Jersey R. Co., supra; Eel River R. Co.* v. *State, ex rel.* (1900), 155 Ind. 433, 57 N. E. 388; *Peoria, etc., R. Co.* v. *Coal Valley Min. Co.* (1873), 68 Ill. 489; *Richardson* v. *Sibley* (1865), 11 Allen (Mass.) 65, 87 Am. Dec. 700; *Black* v. *Delaware, etc., Canal Co.* (1871), 22 N. J. Eq. 130; *Gulf, etc., R. Co.* v. *Morris* (1887), 67 Tex. 692, 4 S. W. 156; *Florida, etc., R. Co.* v. *State, ex rel.* (1893), 31 Fla. 482, 13 South 103, 20 L. R. A. 419, 34 Am. St. 30; *St. Joseph, etc., R. Co.* v. *Ryan* (1873), 11 Kan. 602, 15 Am. Rep. 357; *Central, etc., R. Co.* v. *Morris* (1887), 68 Tex. 49, 3 S. W. 457; *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.* (1886), 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83; *Fanning* v. *Osborne* (1886), 102 N. Y. 441, 7 N. E. 307; 1 Elliott, Railroads (2d ed.) §359; 3 Thompson, Corporations (2d ed.) §2906.

The legal effect of the contract, and not its form, or the alleged pretense for its execution, is of controlling influence in determining the remedy the parties may have for its enforcement, and mandatory injunctions will be granted only to prevent serious damage. 16 Am. and Eng. Ency. Law (2d ed.) 343. A judicial approval and the enforcement of the contract in question would prohibit

514    APPELLATE COURT OF INDIANA,

Evansville, etc., Ry. Co. v. Evansville, etc., Ry.—50 Ind. App. 502.

the Rockport Company, for a period of thirty-five years, from operating a road between Newburgh and Evansville, and have the effect of validating a contract of doubtful validity at most, when construed in the light of the objects intended to be accomplished by the granting of the franchise. Here a mandatory injunction is prayed, which should be allowed in a proper case, but as a rule, courts will not grant an extraordinary remedy unless the complainant makes out a clear case. But the decision in this case rests on other grounds.

Traction companies may make valid traffic or operating agreements for the use by one of another's tracks, terminals, equipment, etc., where, by so doing, neither company incapacitates itself from performing its duties to the public, or does not create a monopoly in favor of one of the contracting parties, or foregoes its charter rights to construct and operate a competing road, except such contract be authorized by the governing statute. 1 Elliott, Railroads (2d ed.) §357; *Union Pac. R. Co.* v. *Chicago, etc., R. Co., supra.*

In this case we are referred to §5652, *supra*, as the statute authorizing the present contract. That statute has to do with a sale or lease, and we do not regard the contract before us as either. *Troy, etc., R. Co.* v. *Boston, etc., R. Co.* (1881), 86 N. Y. 107. The Newburgh Company did not intend to buy the franchise of the Rockport Company between Newburgh and Evansville, nor did the latter company attempt to sell or lease the unconstructed portion of its road, or other property. As we see the transaction, it amounted to a prohibition against one company operating its road in territory occupied by the other, and therefore invalid on the ground that it tends to stifle competition, and to create a monopoly. *Chicago, etc., R. Co.* v. *Southern Ind. R. Co., supra.*

For the reasons stated, we are not convinced that this is a

case where the court can safely grant a mandatory injunction. Judgment affirmed.

Hottel, C. J., Lairy, Felt, Adams and Ibach, JJ., concur.

NOTE.—Reported in 98 N. E. 649. See, also, under (2) 33 Cyc. 38, 69; (3) 33 Cyc. 421; 36 Cyc. 620; (4) 33 Cyc. 410; (5) 33 Cyc. 69; (8) 22 Cyc. 749. As to the validity of contracts between public service corporations to fix prices or rates, or to divide trade or territory, see 6 Ann. Cas. 157. As to the invalidity of combinations between carriers as stifling competition, see 74 Am. St. 249; as to the general effect on a street railway company of the acceptance by it of its franchise, see 104 Am. St. 637.